Filed 10/30/13  P. v. Raines CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062264 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD230332) |
| CHRISTOPHER MICHAEL RAINES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Remanded with instructions to amend abstract of judgment; affirmed in all other respects.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise S. Jacobson and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Christopher Michael Raines guilty of (1) committing a lewd act upon a child (Pen. Code, § 288, subd. (a)),[1] with the further finding that he personally inflicted bodily harm (§ 288, subd. (i)(1)); and (2) felony child abuse (§ 273a, subd. (a)), with the further finding that he personally inflicted great bodily injury on a child under the age of five (§ 12022.7, subd. (d)).  The jury also made true findings on allegations under the "One Strike" law[2] that, as to the lewd act count, Raines personally inflicted bodily harm on a victim under 14 years of age and personally inflicted great bodily injury (§ 667.61, subds. (a), (c), (d)).

The trial court sentenced Raines to prison for an indeterminate term of 25 years to life.

Raines contends the trial court erred by (1) admitting into evidence statements made in violation of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); (2) admitting into evidence testimony describing prior acts of sexual abuse; (3) imposing and then staying additional prison terms for the lewd act count (count 1); and (4) imposing a $60 fee that it referred to as an "ICNA" fee at sentencing.

We conclude that the trial court erred by imposing and staying additional prison terms for count 1, but that Raines's remaining arguments lack merit.  We accordingly remand for the trial court to correct the abstract of judgment to remove reference to the

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]    "Section 667.61 . . . is sometimes called the 'One Strike' law."  (*People v. Anderson* (2009) 47 Cal.4th 92, 99.)

additional imposed and stayed prison terms for count 1, and we otherwise affirm the judgment.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

Raines was caring for a 22-month-old girl (the Child) on October 17, while her mother (the Mother) was at work. While with Raines, the Child suffered a serious injury to her genital area caused by blunt force trauma consistent with the forcible insertion of a penis or other object into the Child's vagina. The injury consisted of a jagged rip of approximately 1.5 centimeters in the Child's perineum, between her vagina and anus. There were also serious injuries to the Child's internal vaginal structures, and the Child's hymen was broken and torn away. The injury caused a large amount of bleeding that soaked the Child's diapers. A pediatrician who specializes in child abuse later examined the Child and determined that the injury did not appear to be the result of an accident, and the insertion of fingers into the Child's vagina would not have caused such an extensive injury.

Deciding that the injury required medical attention, Raines drove to meet the Mother at her workplace to pick up the Child's medical insurance card before driving to the hospital. On the way to the hospital, Raines told the Mother that the injury occurred while he and the Child were in the shower and the Child slipped out of his arms. After examining the Child, an emergency room doctor suspected sexual abuse and notified the police.

Police officers spoke to Raines at the hospital. Raines initially told them that while he was taking a shower with the Child, she slipped out of his arms and he grabbed her while she was falling, which may have caused her injuries. When a police officer told Raines that, according to the doctor, the Child's injuries were not consistent with a slip in the shower, Raines put his head down and said, "My life is over." After being silent with his head down for several minutes, Raines stated that the Child did not slip in the shower. Raines explained that, instead, the Child was injured when he was changing her diaper on the bed. According to Raines, the Child was falling off the bed when he grabbed her to stop her fall, possibly causing his finger to penetrate her "butt."

The Child was transferred to Children's Hospital, where she underwent surgery to repair her injuries.

While Raines was at Children's Hospital with the Child, he was interviewed by police detectives in a private room. The interview, which was recorded, commenced shortly before midnight on October 17 and did not end until 1:47 a.m. on October 18. Near the beginning of the interview, Raines was informed of his *Miranda* rights and agreed to speak to the detectives. Raines repeated the claim that the Child was injured when he was changing her diapers and he grabbed her as she fell off the bed. He stated that he originally claimed the injury happened in the shower because he was "in panic mode" when he first got to the hospital. He denied touching the Child with his penis.

Early in the morning on October 18, Raines was taken to the police department where a nurse performed a sexual assault examination on Raines, including taking swabs from Raines's penis and scrotum. A subsequent DNA analysis of a bloody swab from

4

Raines's penis showed the Child as a possible contributor of some of the DNA on the swab.

Around 8:00 a.m. on October 18, a police interviewer and a police detective questioned Raines at the police station in a recorded interview (the third police interview). During the third police interview, Raines initially maintained his prior claim that he must have accidentally injured the Child when she fell from the bed during a diaper change. However, near the end of the interview, Raines stated that he intentionally inserted two fingers into the Child's vagina to restrain the Child when he lost his temper due to the difficulty of changing the Child's diaper while she was moving around. At the conclusion of the interview, the police detective arrested Raines.

A search of the home where Raines was caring for the Child revealed — among other things — a blood stain on the mattress where the Child's diaper was changed, a bloody sheet from that bed that Raines admitted putting in the outside trash can before going to the hospital with the Child, and blood stains on the floor of the bedroom.

Raines was charged with one count of committing a lewd act upon a child under the age of 14 (§ 288, subd. (a)), with the further allegation for sentencing purposes under section 288, subdivision (i)(1) that he personally inflicted bodily harm, and further allegations for sentencing purposes under the One Strike law that he personally inflicted bodily harm on a victim under 14 years of age and personally inflicted great bodily injury (§ 667.61, subds. (a), (c), (d)(6) & (7)). Raines was also charged with one count of felony child abuse (§ 273a, subd. (a)).

5

At trial, two of Raines's female relatives (Girl No. 1 and Girl No. 2), who were both 17 years old at the time of trial, testified that they were sexually molested by Raines when they were approximately three and four years old and Raines was an adult.

Girl No. 1 testified that when she was approximately three years old, Raines walked into the room, exposed his penis to her, and asked whether she wanted to touch it and whether he could touch her. She poked at Raines's penis and then ran out of the room after he tried to touch her crotch. According to Girl No. 1, she disclosed the incident to her parents shortly after it occurred. Girl No. 1's mother testified at trial that she learned of the incident shortly after it happened but decided not to take any action against Raines after she spoke with him and he contended it was a misunderstanding.

Girl No. 2 testified that when she was approximately four years old Raines came into her bedroom and asked her if she would touch his body parts and have sex with him. She did not understand the question and said "Yes." Raines pulled down his pants and got on top of her. It hurt her and she said "Ow," after which Raines stopped and left the room. Girl No. 2 remembered bleeding from her vagina onto her legs. According to the testimony of Girl No. 2 and of her mother, Girl No. 2 disclosed the molestation to her mother when she was approximately 13 years old, at which time her mother did not take any action against Raines.

The jury found Raines guilty on both counts and further found the bodily injury allegations to be true. The trial court sentenced Raines to prison for a term of 25 years to life.

II

DISCUSSION

A.  *Admission into Evidence of Raines's Statements Made During the Third Police Interview*

Raines contends that the statements he made during the third police interview — which took place at approximately 8:00 a.m. on October 18 — should not have been admitted at trial because he was not advised of his *Miranda* rights prior to that interview.

1.  *Applicable Law*

The general rule excluding statements obtained in violation of *Miranda* is well established.  "*Miranda* . . . , *supra*, 384 U.S. 436, and its progeny protect the privilege against self-incrimination by precluding suspects from being subjected to custodial interrogation unless and until they have knowingly and voluntarily waived their rights to remain silent, to have an attorney present, and, if indigent, to have counsel appointed."  (*People v. Gamache* (2010) 48 Cal.4th 347, 384.)  Statements obtained in violation of *Miranda* are generally inadmissible to establish guilt.  (*People v. Sims* (1993) 5 Cal.4th 405, 440.)

2.  *Because He Made No Objection at Trial, Raines Has Forfeited His Appellate Argument That His Statements During the Third Police Interview Should Not Have Been Admitted into Evidence*

An evidentiary objection at trial is a prerequisite to obtaining reversal of a judgment based on the erroneous admission of evidence.  As our Supreme Court has explained, " 'Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a

7

motion to strike it was "timely made and so stated as to make clear the specific ground of the objection." Pursuant to this statute, " 'we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' " ' " (*People v. Rundle* (2008) 43 Cal.4th 76, 116.) "*Miranda*-based claims are governed by this rule. 'The general rule is that a defendant must make a specific objection on *Miranda* grounds at the trial level in order to raise a *Miranda* claim on appeal.' " (*People v. Mattson* (1990) 50 Cal.3d 826, 854.)[3]

Here, Raines made no objection at trial to the admission of his statements during the third police interview. Accordingly, Raines may not pursue an appeal based on the contention that the statements he made during the third police interview were erroneously admitted into evidence in violation of *Miranda*.

3. *Raines Has Not Established Ineffective Assistance of Counsel*

Raines argues that if the *Miranda* issue has not been preserved for appeal due to defense counsel's failure to object in the trial court, the judgment should be reversed because he received ineffective assistance of counsel.

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the

---

3    Although Raines contends that we have the discretion to consider an argument made for the first time on appeal, that principle does not apply here because the asserted ground for reversal is the purportedly erroneous admission of evidence to which there was no objection at trial. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court is barred from reaching a question that has not been preserved for review by a party "when the issue involves the admission (Evid. Code, § 353) or exclusion (*id.*, § 354) of evidence"].)

assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  A defendant claiming ineffective assistance of counsel has the burden to show:  (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *Ledesma*, at pp. 216, 218.) Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland*, at p. 694.)

Further, as important here, "[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see also *People v. Anderson* (2001) 25 Cal.4th 543, 569.)  "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions."  (*People v. Weaver* (2001) 26 Cal.4th 876, 926 (*Weaver*).)  Moreover, "[t]he decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel."  (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1335.)

Here, because there could have been a tactical reason for defense counsel's failure to object to the admission of Raines's statements made during the third police interview,

9

the record on direct appeal is insufficient to establish that defense counsel provided ineffective assistance. One plausible reason for defense counsel's failure to object to the admission of the statements Raines made during the third police interview could be that defense counsel believed it would be useful to have the jury hear the explanation for the Child's injuries offered by Raines in that interview. Indeed, in the third police interview Raines provided a more plausible non-sexual explanation for the injuries than his previous claims that the Child was injured while falling off the bed or in the shower. During closing argument, defense counsel focused on Raines's statements made during the third police interview, arguing that Raines's explanation for the Child's injuries was reasonable, and based on that explanation, although Raines may have committed child abuse as charged under count 2, he did not have the sexual intent necessary to support a finding of guilt on the lewd act count.[4] Because we cannot say that there was "no conceivable reason for counsel's acts or omissions," Raines has not established ineffective assistance of counsel. (*Weaver*, *supra*, 26 Cal.4th at p. 926.)

---

[4] During closing argument, defense counsel argued that Raines's version of events as stated in the third police interview was a reasonable explanation for the Child's injuries. "There's nothing unreasonable about what Mr. Raines said happened here. . . . His version of events, while they came at the end, . . . it's not unreasonable." Defense counsel stated, "Another reasonable explanation for that [injury] is exactly what you heard Mr. Raines say after he was broken down by all the officers. Of fingers going in and fingers pushing down. And the law tells you that you have to accept the one that points to innocence." As defense counsel explained to the jury, "That's what count 2 is. That Mr. Raines, for whatever terrible reasons that we're not here to figure out, abused [the Child] and hurt her physically. But they can't prove it to you that it was done sexually."

In addition, the factual record is undeveloped regarding the circumstances of the third police interview. Witnesses at trial were not questioned about whether Raines was reminded of his *Miranda* rights prior to the beginning of the recorded portion of the third police interview. Further, counsel's questioning did not explore the issue of whether Raines was in police custody during the third police interview, and thus it is unclear whether the interview qualified as a *custodial* interrogation under *Miranda*. (See *People v. Linton* (2013) 56 Cal.4th 1146, 1167 ["'An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"'" with "the pertinent question being whether the person was formally arrested or subject to a restraint on freedom of movement of the degree associated with a formal arrest"].) Therefore, it is possible that defense counsel had information about the circumstances of the third police interview that are not apparent from the undeveloped factual record — such as that Raines was reminded of his *Miranda* rights or was not in police custody — which reasonably could explain counsel's failure to argue for the exclusion of Raines's statements. "'"[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) In this case, because the factual record concerning the circumstances of the third police interview is not adequately developed,

11

this direct appeal is not the appropriate forum for evaluating Raines's claim of ineffective assistance of counsel.

B.      *Raines's Challenge to the Admission of the Testimony Concerning the Molestation of Girl No. 1 and Girl No. 2 Is Without Merit*

We next consider Raines's argument that the trial court erred in admitting evidence of the molestation of Girl No. 1 and Girl No. 2.

1.      *Raines's Challenge to the Constitutionality of Evidence Code Section 1108*

We first consider Raines's constitutional challenge to the evidentiary provision under which the trial court admitted evidence of Raines's sexual abuse of Girl No. 1 and Girl No. 2.

The evidence was admitted under Evidence Code section 1108, subdivision (a), which states:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[5]

---

[5]      Evidence Code section 1101 addresses the exclusion of evidence of a person's character or a trait of his or her character to prove his or her conduct on a specified occasion.

12

Raines contends that the trial court improperly relied on Evidence Code section 1108 for the admission of evidence in this action because section 1108 violates constitutional principles of due process and equal protection.[6]

We reject the due process argument because our Supreme Court has decided that Evidence Code section 1108 does not violate a defendant's constitutional right to due process (*People v. Falsetta* (1999) 21 Cal.4th 903, 916 (*Falsetta*)), and we are required to follow that decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

We also reject the argument that Evidence Code section 1108 violates Raines's constitutional right to equal protection. Although our Supreme Court has not expressly ruled on the equal protection argument, a well-reasoned intermediate appellate court opinion has rejected it (*People v. Fitch* (1997) 55 Cal.App.4th 172, 182-184), and our Supreme Court has cited that decision with approval. As our Supreme Court has explained, "*Fitch* . . . rejected the defendant's equal protection challenge, concluding that the Legislature reasonably could create an exception to the propensity rule for sex offenses, because of their serious nature, and because they are usually committed secretly and result in trials that are largely credibility contests." (*Falsetta*, *supra*, 21 Cal.4th at p. 918; see also *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1312 [observing that "the Supreme Court in *Falsetta* appeared to indicate its agreement with the *Fitch* court's

---

6     As Raines recognizes, prior courts have rejected constitutional challenges to Evidence Code section 1108, but he raises the argument primarily to preserve it for a later federal post-conviction review.

13

equal protection holding"].)  We follow *Fitch* in concluding that Evidence Code section 1108 does not infringe upon Raines's constitutional right to equal protection.  (See *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 (*Waples*) [rejecting equal protection attack on Evid. Code, § 1108 "[f]or the reasons best expressed in *Fitch*, which were endorsed in *Falsetta*"].)

2.      *The Trial Court Did Not Abuse Its Discretion in Declining to Exclude the Evidence of Other Sexual Offenses Under Evidence Code Section 352*

Raines next contends that, pursuant to Evidence Code section 352, the trial court should have granted his motion in limine to exclude evidence of his sexual molestation of Girl No. 1 and Girl No. 2.

Evidence Code section 352 allows the trial court, in its discretion, to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (*Ibid.*)

"We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352."  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)  "We will not find that a court abuses its discretion in admitting . . . other sexual acts evidence unless its ruling '"falls outside the bounds of reason[,]"'" and "the court has exercised its discretion in a manner that has resulted in a miscarriage of justice."  (*People v. Miramontes* (2010) 189 Cal.App.4th at 1085, 1098 (*Miramontes*).)

"The weighing process under Evidence Code section 352 'depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the

14

mechanical application of automatic rules.'" (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1097.) When considering whether to exclude evidence of another sexual offense under Evidence Code section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) "[T]he probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense," and "the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual convictions and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Ibid.*, italics deleted.) Further, in evaluating whether to admit evidence of other sexual offenses, the court should consider "'whether "[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses."'" (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1097.) "'"The 'prejudice' referred to in Evidence Code section 352 applies to evidence

15

which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, 'prejudicial' is not synonymous with 'damaging.'"'"  (*Id.* at p. 1098.)

As an initial matter, we observe that the evidence of Raines's molestation of Girl No. 1 and Girl No. 2 was highly probative on a central factual dispute in this case, which was whether Raines injured the Child with his fingers after losing his temper or injured her when he had sexual intercourse with her.  "[U]ncharged prior offenses that are very similar in nature to the charged crime logically will have more probative value in proving propensity to commit the charged offense."  (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966; see also *Falsetta*, *supra*, 21 Cal.4th at p. 917 ["the relative similarity between the charged and uncharged offenses" increases the probative value].) Here, the incidents involving Girl No. 1 and Girl No. 2 were both very similar to the incident involving the Child in that they both involved intentional sexual conduct with very young girls in which Raines used his penis and either touched or attempted to touch the girls' genitals.  There were even further similarities between this case and the incident involving Girl No. 2 in that Raines had sexual intercourse with Girl No. 2 and injured her in the same way that the Child was injured, causing bleeding from her vagina.  Therefore, the earlier incidents were highly probative of whether Raines acted in conformity with his

prior conduct by engaging in intentional sexual acts with young girls rather than injuring the Child through non-sexual contact as he claimed.[7]

Despite the highly probative nature of the evidence, Raines contends that it should have been excluded because it was unreliable due to certain inconsistencies in the descriptions given by the girls over time as they spoke to different people about the abuse. Raines contends that "[t]he trial testimony of [the mother], [Girl No. 1], and [Girl No. 2] . . . differed significantly on important facts. It also differed from what they told [an investigating police officer in this case] during her forensic interviews. This showed the testimony to be unreliable, and rendered the differing stories confusing."[8]

As we have noted, one factor a trial court may consider in determining whether to exclude evidence of a prior sexual offense under Evidence Code section 352 is "the degree of certainty of its commission." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) In the circumstances of this case, we do not believe that the inconsistencies and vagueness in the girls' testimony renders the testimony so unreliable that it should have been excluded.

7       Raines also specifically challenges the trial court's admission of the testimony of the girls' mother, claiming that "[a]t the least [the mother's] testimony should have been excluded under [Evidence Code] section 352 because it added nothing to the testimony of [Girl No. 1 and Girl No. 2]." We disagree. The mother's testimony was relevant because she was an adult at the time the incidents occurred, she was able to corroborate the girls' sometimes vague memories from when they were much younger, and her testimony that the girls disclosed the molestation to her several years ago bolstered the girls' credibility.

8       Raines is referring to inconsistencies in some of the details that the girls gave at different times, such as in statements to their mother, to the police investigator or at trial. The differences concerned details such as whether the molestation occurred on a bed or on the floor, whether the girl was holding a doll when Raines entered her room and whether the girl was asleep during the molestation.

As Raines acknowledges, "the inconsistent and confusi[ng] evidence in this case was likely due to the victims' young ages when the abuse occurred." Raines targeted very young girls for sexual molestation, which meant that the victims would likely have relatively vague memories as a result of their young age at the time of the abuse. The trial court reasonably could conclude that the girls' young ages at the time they were victimized provides a reasonable explanation for any inconsistencies. The trial court could also reasonably conclude that it would be unjust to allow Raines to benefit from the fact that his victims were too young to have precise memories of the abuse. Given the highly probative nature of the girls' testimony, the trial court was well within its discretion to decide that any prejudice due to its unreliability was outweighed by the probative value of the evidence.[9]

Raines also argues that the incidents involving Girl No. 1 and Girl No. 2 were too remote in time to be probative. "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible[,]" and "substantial similarities between the prior and the charged offenses" may serve to "balance out the remoteness of the prior offenses." (*People v. Branch* (2001) 91

---

[9]  We note also that the evidence of Raines's sexual abuse of Girl No. 1 and Girl No. 2 was no more inflammatory than the facts of the instant offense, as Raines's physical contact with Girl No. 1 and Girl No. 2 was no more intrusive than his contact with the Child, and the injuries to Girl No. 1 and Girl No. 2, if any, were less serious than the injury to the Child. Therefore, the trial court's consideration of "'whether "[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses"'" (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1097) would reasonably have weighed in favor of admitting the evidence.

18

Cal.App.4th 274, 284-285.) As described at trial, the incidents occurred approximately 12 years before the Child was injured. Courts have held that a time gap of even longer than 12 years is not too remote in time when the evidence is otherwise probative. (See *Waples*, *supra*, 79 Cal.App.4th at p. 1395 [20 years]; *People v. Frazier* (2001) 89 Cal.App.4th 30, 41 [15 or 16 years].) The trial court reasonably could decide that due to the close factual similarities between the prior incidents and the current offense, the evidence of the earlier incidents was not unduly prejudicial merely because they occurred 12 years before.

In sum, we conclude that the trial court did not abuse its discretion under Evidence Code section 352 by allowing the introduction of evidence that Raines molested Girl No. 1 and Girl No. 2.

B.    *Raines's Challenge to His Sentence*

1.    *Raines's Challenge to Trial Court's Imposition and Staying of Additional Prison Terms for Count 1*

The trial court sentenced Raines to a term of 25 years to life on count 1. Specifically, Raines was sentenced pursuant to section 667.61, subdivision (a) — commonly known as the "One Strike law" — which provides for a sentence of 25 years to life when a defendant is convicted of an enumerated sexual offense (including, as relevant here, violation of § 288, subd. (a)) and the People plead and prove one or more specified aggravating circumstances (§ 667.61, subd. (b)). Here, the jury made a true finding on two such aggravating circumstances, namely that Raines personally inflicted

19

bodily harm on a victim under 14 years of age and that he personally inflicted great bodily injury. (§ 667.61, subd. (d)(6) & (7).)

Although Raines does not dispute that a sentence of 25 years to life is the correct sentence for him to be serving under the One Strike law, he takes issue with the trial court's process for arriving at that sentence, in which it imposed and stayed additional prison terms for count 1. Raines asks us to remand this case so that the trial court can correct its error and issue an amended abstract of judgment.

As an initial matter, we describe the trial court's approach to sentencing Raines for his conviction in count 1 for committing a lewd act upon a child (§ 288, subds. (a), (i)(1)).

First, during the sentencing hearing, before addressing the One Strike law, the trial court explained that it was imposing a sentence of life with the possibility of parole for Raines's conviction on count 1 pursuant to section 288, subdivision (i)(1), which provides for that sentence when the defendant has personally inflicted bodily harm in committing a lewd act against a child.[10] The trial court then stayed the sentence of life with the possibility of parole pursuant to section 654.

Next, turning to the sentence indicated in the One Strike law, the trial court imposed two terms of 25 years to life, corresponding to each of the two aggravating

---

[10] Section 288, subdivision (i)(1) provides for a sentence of life with the possibility of parole if a defendant guilty of committing a lewd action against a child under section 288, subdivision (a) has been found to have personally inflicted bodily harm upon the victim.

circumstances that the jury found to be true (§ 667.61, subd. (d)(6) & (7)). It stayed the first of those 25-year-to-life terms and ordered Raines to serve the second term.[11] In accordance with the trial court's pronouncement at sentencing, the abstract of judgment states (1) the sentence imposed pursuant to section 288, subdivisions (a) and (i)(1) is stayed; (2) one of the 25-year-to-life terms imposed under the One Strike law is stayed; and (3) the term to be served is the other 25-year-to-life term imposed under the One Strike law. The abstract of judgment also lists the sentences imposed under the One Strike Law as "Enhancement."

Raines contends that according to the approach required by statute, (1) the trial court should not have imposed and stayed the life with the possibility of parole sentence imposed under section 288, subdivision (i)(1); and (2) the trial court should not have imposed and stayed the second 25-year-to-life sentence imposed under the One Strike law. Instead, according to Raines, his sentence for count 1 should simply reflect a single 25-year-to-life sentence imposed pursuant to the One Strike law. Raines also takes issue with the abstract of judgment's description of the sentence imposed under the One Strike law as an "Enhancement."

The Attorney General agrees that the trial court's approach was incorrect and that the judgment should be amended to reflect a single 25-year-to-life term for count 1. As we will explain, we agree with the parties.

---

[11] The trial court also stayed the 11-year sentence imposed for count 2 under section 654.

We begin with the principle that the One Strike law is an alternative sentencing scheme, not an enhancement.  "[T]he One Strike law does not establish an enhancement, but 'sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes' when a defendant commits one of those crimes under specified circumstances."  (*People v. Acosta* (2002) 29 Cal.4th 105, 118.)  Under the One Strike law, the trial court is required to impose the sentence specified under that sentencing scheme "unless another provision of law provides for a greater penalty."  (§ 667.61, subd. (f).)

Because the One Strike law is an *alternative* sentencing scheme under which the harsher penalty is to be imposed *instead* of the penalty specified by other provisions of law, the trial court improperly sentenced Raines under both section 288, subdivision (i)(1) and the One Strike law.  As the One Strike law provides for the greater penalty of 25 years to life (§ 667.61, subd. (a)), the trial court should have imposed only that sentence.  There was no legal basis for the trial court to impose and then stay the sentence specified in section 288, subdivision (i)(1).[12]

Next, the One Strike law does not provide for the imposition of two sentences of 25 years to life for the same count when the jury makes a true finding as to two aggravating circumstances.  Section 667.61, subdivision (f) states that "if any additional circumstance or circumstances specified in subdivision (d) or (e) [i.e., aggravating circumstances] have been pled and proved, the minimum number of circumstances shall

---

[12]    As the penalty required by the One Strike law is not an enhancement, the trial court further erred by listing the sentence under the One Strike law as an "Enhancement" on the abstract of judgment.

22

be used as the basis for imposing the term provided in subdivision (a) . . . and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any *other* provision of law." (§ 667.61, subd. (f), italics added.) Because the additional circumstances are used to impose punishment under any *other* provision of law, the statute does not authorize the use of additional circumstances to impose a second 25-year-to-life term for the same count under the One Strike law. Both parties agree that the reasonable approach under the One Strike law when the jury has made a true finding on additional circumstances that are not needed to meet the requirement for the imposition of a 25-year-to-life term pursuant to section 667.61, subdivision (a) is for the true finding on the additional circumstance to simply remain on the record as an additional unimposed special allegation found true by the jury.

We will remand this matter to the trial court with directions that it correct the abstract of judgment with respect to count 1 to reflect a single 25-year-to-life term imposed under the One Strike law, and the true finding on the additional circumstance shall remain on the record as an additional unimposed special allegation found true by the jury.

2.     *Raines's Challenge to the "ICNA Fee"*

During sentencing, the trial court stated that it was imposing a "$60 ICNA fee." The abstract of judgment refers to a $60 "Criminal Conviction Assessment . . . per [Government Code section] 70373."

Raines contends that the $60 fee was not properly imposed because the trial court referred to it as an "ICNA fee" at sentencing instead of referencing Government Code

section 70373. Raines does not contend that the $60 fee required by Government Code section 70373 was *unauthorized* in this case. He merely takes issue with the trial court's *description* of the fee at the sentencing hearing.

We reject Raines's argument. Government Code section 70371.5 establishes the "Immediate and Critical Needs Account" (ICNA) of the State Court Facilities Construction Fund. The ICNA is funded by a criminal conviction assessment fee, as mandated in Government Code section 70373. (Gov. Code, § 70373, subds. (a)(1), (d).) The criminal conviction assessment fee is imposed for every criminal conviction "in the amount of thirty dollars ($30) for each misdemeanor or felony" to "ensure and maintain adequate funding for court facilities." (Gov. Code, § 70373, subd. (a)(1).) These assessments are then transferred for deposit into the ICNA. (Gov. Code, § 70373, subd. (d).)

With this statutory background in mind, it is clear to us — and should have been clear to experienced trial counsel — that the trial court's reference to an "ICNA fee" was a short-hand way of referring to the fee authorized and required by Government Code section 70373.

There is no indication in the record that anyone present during the sentencing hearing was unclear about the fee that the trial court referred to as the "ICNA fee." However, if defense counsel was unclear about what the trial court was referring to as the "ICNA fee," it was his burden to ask for clarification during the sentencing hearing. He did not, and thus Raines may not complain on appeal about the trial court's description of the fee. (*People v. Scott* (1994) 9 Cal.4th 331, 353 [if counsel does not ask for

24

clarification and correction as to the trial court's statement of reasons for sentencing choices, the issue is waived on appeal as long as sentence is not unauthorized].)

As the $60 fee was authorized by Government Code section 70373 and defense counsel did not object to the trial court's description of the fee at sentencing, Raines's contention that the trial court erred is without merit.

DISPOSITION

We remand this matter to the trial court with directions that it correct the abstract of judgment with respect to count 1 to reflect a single 25-year-to-life sentence imposed under 667.61, subdivisions (a), (c) and (d), and that it forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

25