Filed 8/16/16  P. v. Severt CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND SEVERT,<br><br>          Defendant and Appellant. | A143499<br><br>(Marin County<br>Super. Ct. No. 183894A) |

Defendant Raymond Severt appeals from a judgment entered after a jury convicted him of five counts of criminal conduct occurring in 2013 based on sexually explicit text messages he sent to a 13-year old girl and his subsequent 45-mile drive to meet her.  Defendant raises a single issue on appeal—an evidentiary ruling that would have allowed evidence of online communications he had in 1997 with another minor and her mother (pretending to be a minor) to rebut expert testimony he wanted to present in defense of the 2013 charges.  Defendant claims the ruling effectively precluded him from offering the expert testimony and thereby violated his constitutional rights to present a defense and to due process.  We conclude the court did not abuse its discretion in making the evidentiary ruling and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant admitted that in 2013 he exchanged more than 200 text messages, many sexually explicit, with then 13-year old Maria Doe over a 24-hour period, and then drove 45 minutes to meet her.  His defense was that he reasonably believed Maria was an adult.

1

Defendant obtained Maria's telephone number after dialing into an adult chat line. Maria called the line as a "prank" during a slumber party with friends. To leave an online message, Maria had to press a number on her telephone indicating she was 18 or older. She also recorded an introductory voice message stating she was 19.

Within 27 minutes of beginning the text exchanges with defendant, Maria confessed she was not an adult. At first, she said she was 17, and then, that she was 15.

Defendant did not express any concern or hesitation following these disclosures. In fact, less than a minute after receiving Maria's text that she was 17, he responded "Awesome," asking a minute later, "So do you watch porn ever and masturbate[?] I love masturbating and cumming." Ten seconds after Maria texted she was 15, he asked "Do you ever masturbate yourself[?]"

During the course of their text exchanges, Maria disclosed it was her first time on-line, she lived at home with her mother, attended high school, had tutoring afterward, could not stay up late on school nights, and was "kinda boring." She said she had to babysit her cousins and help her mother, a gas station attendant, with her night job assisting the disabled.

When defendant asked her to describe her physical appearance, Maria replied she was five feet eight inches tall and weighed 185 pounds, later confiding she had type 2 diabetes. When defendant asked what she would like to do if they met, initially she responded "Maybe go to the beach or something romantic." Later, however, she suggested a movie, saying her mother could "drop [her] off."

Defendant's texts, in contrast, focused on sexual matters. Less than five minutes after Maria told him she was 17, he offered to "teach [her] how to do stuff," adding he could help her "kiss[] better" and teach her "[h]ow to hold a guys cock. Giving handjob blowjob." Asking if Maria wanted to "learn things like that," he said "We could do it in the car. Really fun." Shortly after Maria told him she was 15 and suggested a movie, defendant replied they could just "make out in [the] car" and "I'll [j]ack off for you too.

You can see me cum." Later, still discussing a possible meeting that week at the theater, defendant texted in quick succession: "Yes" "Lets plan meeting on Friday" "Kiss" "Play with your tits" "You can feel my cock in your hands" "Do you want to try to put my cock in your mouth too[?] Blowjob."

In his initial text exchanges, before Maria disclosed she was a minor, defendant suggested they meet. He continued to express interest in meeting after her disclosure. He encouraged her to "sneak away" by saying she was going to a friend's house, and offered to pick her up "from home" when her mother was away. He asked her to call and Skype, and he actually did speak with her on the phone for about three minutes. He repeatedly requested photos, suggesting she take some "[s]exy ones" in the "locker room or bathroom at school," and Maria did send him a photo. Later he texted, cautioning her, "Make sure your mom can't see messages. Erase them right :)"

Eventually, Maria's mother became suspicious about her daughter's cell phone activity and took a look at the phone. She found the exchange of messages, saw the sexual content, and "freaked out." As defendant continued to send new texts, she began replying, posing as Maria, to determine whether he was an adult.

Eventually defendant called Maria's cell phone, but hung up when her mother answered. Her mother returned the call, reached a doctor's office and concluded an adult was sending the texts. She took the cell phone to the police, while continuing to text with defendant.

In one of her messages, posing as her daughter, Maria's mother said she was only 13. Undeterred, defendant replied, "So can you get away today[?]" "Kiss and touch[?]" Eventually, defendant agreed to meet one block from Maria's house at a 7-Eleven store in Novato. After doing so, he texted, "You want to touch my cock right[?]" "Teach you how to hold it in your hand" and asked, "Have you put your fingers in your pussy[?] How deep[?]" After a few further exchanges about the meeting, defendant texted it

3

would take him about 45 minutes to drive from Santa Rosa. When he arrived, police officers arrested him.

Defendant was charged with attempting a lewd act on a child under 14 (Pen. Code, §§ 644, 288, subd. (a)); distribution of lewd material to a minor (*id*., § 288.2, subd. (a)); contacting and communicating with a minor for purpose of engaging in lewd and lascivious behavior (*id*., § 288.3, subd. (a)); arranging a meeting with a minor for purpose of engaging in lewd and lascivious behavior (*id*., § 288.4, subd. (b)); and annoying or molesting a child (*id*., § 647.6, subd. (a)). A jury found him guilty on all counts.

## DISCUSSION

### Defendant's Expert Witnesses

Defendant wanted to present testimony by two experts to support his claim that he reasonably assumed Maria was an adult and therefore did not have the intent required for the charged crimes.

The first expert, Dr. James Herriot, was a professor of clinical sexuality and a researcher on Internet chat culture and its fantasy component. Defendant planned to offer Dr. Herriot's testimony regarding "role-playing in the context of sexually explicit conversations on the internet and other similar media." Dr. Herriot would explain, for example, "the idea of age-play and the expectations of someone participating in these role-playing activities." He also would "discuss why people might want to meet their partners," or "ask for a photograph," to " 'de-mask' the other player" without "any intention of participating in sexual activity."

The second expert, Dr. Marty Klein, was a licensed marriage and family therapist, with a Ph.D. in human sexuality. Dr. Klein was prepared to testify to the "prevalence of age-play and sex play throughout culture," and about how "people engage in erotic fantasy role-playing for many reasons." He would have testified about "the mindset" of those engaging in such a "role-play partnership," studies showing "sexual fantasy does

4

not predict sexual behavior," and reasons "a participant might not seek to clarify the age of his partner in the face of contradictory information."

At a pre-trial hearing, over the prosecution's objection, the court granted defendant the right to present the expert testimony, with certain limiting instructions, which defendant does not challenge.

### Defendant's 1997 Online Communications

In 1997, defendant communicated online with a girl who said at the outset she was 16 years old, asking what she looked like and whether she had a "nice body," requesting a photo, and asking if he might call her and whether she had a car. The girl was not interviewed at the time by law enforcement, and told the prosecutor in this case she was 14 years old at the time. She also told the prosecutor the chatting became sexually explicit, defendant asked "about her private parts," and the experience "scared her" and was "traumatizing."

During that same time frame, defendant also had online exchanges with a person who represented herself as being 17, and these communications also included explicit sexual content. This person was actually the mother of the 14-year-old, who made contact with defendant after becoming concerned about his communications with her daughter. Defendant expressed no concerns when the mother, posing as a minor, told him she was 17. On the contrary, he immediately replied, "I like younger women!," asked to speak with her, asked what she looked like, and requested a photo. He also suggested meeting at a park, saying he would like to "kiss" "touch" "stroke" and "lick [her] all over," observing one "can cum many different way (sic)", and asking "do you like oral?" He also asked whether she masturbated, offered to "teach" her, and suggested she could "listen to [him] cumming" if she called him.

Eventually, the minor's mother contacted the police, who interviewed and warned defendant about his online communications with minors, explaining the potential for harm to them. Defendant agreed his conduct had been wrong, acknowledged the point in

5

a letter of apology he sent to the minor, and assured the police he would never actually meet any underage girl whom he connected with online. The local district attorney's office ultimately declined to prosecute.

### *The in Limine Motions Concerning Defendant's 1997 Conduct*

Both the prosecution and defendant filed in limine motions concerning the admissibility of evidence of defendant's 1997 online communications. The prosecution asserted the evidence was admissible under Evidence Code[1] section 1101, subdivision (b), to prove facts other than propensity, namely to show motive, intent, or plan to communicate with a minor with lewd intent, and was admissible under section 1108 to show propensity to commit sexual offenses. In opposition, defendant maintained section 1108 did not apply because the prior conduct was not a "criminal act" and even if the section did apply, the evidence should be excluded under section 352. In his own motion to exclude the evidence, defendant argued the factors identified in *People v. Ewoldt* (1994) 7 Cal.4th 380, governing the admissibility of uncharged prior acts under section 1101 to establish common scheme or plan, weighed against admissibility, and even if they did not, the evidence should be excluded under section 352.

Ultimately, the trial court denied the prosecution's motion to allow the evidence in its case-in-chief. However, it ruled the evidence would be admissible in rebuttal if defendant's experts raised questions about his knowledge or intent in communicating with Maria.

After meeting with both the prior victim and her mother, the prosecution asked the court to re-consider its limitation on the use of the evidence. The trial court maintained its ruling.

---

[1] All further statutory references are to the Evidence Code.

Defendant also objected and urged the court to reconsider and bar the evidence entirely. When it declined to do so, he opted not to call the experts, so the jury never heard the evidence of his 1997 on-line conduct.

***Evidence Code Sections 1101, subdivision (b), and 1108***

In his opening brief on appeal, defendant focused on section 1108, making the same arguments he advanced in the trial court—that his 1997 on-line conduct did not amount to a "criminal act" admissible under that section and even if it did, the evidence should have been excluded under section 352. In the People's responding brief, the Attorney General not only responded to defendant's section 1108 arguments, but also asserted the evidence was admissible under section 1101, subdivision (b). In his reply brief, defendant addressed both section 1108 and 1101, subdivision (b). As to section 1101, subdivision (b), he asserted, for the first time, that it has been "superceded" as to sex crimes by section 1108.

We first consider section 1101, subdivision (b), and review the court's evidentiary ruling for abuse of discretion. Abuse of discretion means the court " ' "exercised its discretion in an arbitrary, capricious, or patently absurd manner," ' " resulting " ' "in a manifest miscarriage of justice." ' " (*People v. Bryant* (2014) 60 Cal.4th 335, 390 (*Bryant*); see *People v. Carrington* (2009) 47 Cal.4th 145, 195.) "A merely debatable ruling cannot be deemed an abuse of discretion." (*Bryant*, at p. 390.)

Section 1101 has two relevant subdivisions. Subdivision (a) " 'prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).) Subdivision (b) " 'clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' " (*Ibid.*) Thus, evidence of past "bad

acts" may be admitted to prove some material fact, such as intent, knowledge, or absence of mistake. (§1101, subd. (b); *People v. Burnett* (2003) 110 Cal.App.4th 868, 880.)

The trial court ruled evidence of defendant's 1997 on-line conduct was relevant to his intent, knowledge and absence of mistake when he continued communicating with Maria after she said she was underage. Noting intent was an element of the charged offenses, the court reasoned defendant "had warning that other people might not have." In 1997, a police officer "knock[ed] on his door and sa[id], look, this is not right. You're talking to a minor. You can't do that." Further, at the officer's request, defendant wrote a letter of apology, confirming he knew his communication with the minor was "very inappropriate." Thus, the court's view was that the prior on-line conduct had "evidentiary value to it as it relates to an element of the offense" and, in fact, had "strong probative value."

We see no abuse of discretion in the trial court's assessment of this evidence. As a result of the events that occurred in 1997, defendant was, indeed, "in a different position" than other adults who lacked experiences with correspondent's misrepresentation about their age in sexually charged communications. "People learn from their experiences. Even when those experiences occurred long ago, the knowledge gained from such experiences can be retained and recalled in the future." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242.) The knowledge defendant gained as a result of his 1997 conduct, of course, was that the age a sex-chatter claims to be on line may not be true, and sex-chatting with a minor can be damaging to the child, is unlawful and great care should be taken to avoid it. Further, the sex chats defendant had with the prior minor and her mother posing as a minor, unfolded and had much the same content as his sex chatting with Maria after she said she was a minor and with her mother, posing as Maria. This was all directly relevant to whether defendant sent sexually explicit messages to Maria and drove to meet her believing she might be underage, or did so completely by mistake, reasonably believing she was an adult. (See *People v. Rocha* (2013)

8

221 Cal.App.4th 1385, 1398 [prior burglary admissible to rebut defendant's claim he was a homeless drug user who innocently stumbled into the victim's garage].)

Defendant contends evidence of his 1997 on-line conduct was not relevant on rebuttal because his experts were going to testify only about "what was occurring on social media in 2013." He maintains the trial court recognized this in ruling the evidence would not be allowed in the prosecution's case-in-chief. Defendant overstates the import of the trial court's ruling. What the trial court did, under the discretion vested in it by section 352, was weigh the competing considerations in context. It did not abuse its discretion in concluding the section 352 scale tipped in favor of keeping the evidence out during the prosecution's case-in-chief, but if defendant's experts opened the door as to his knowledge and intent, that would change the balance and pave the way for the evidence on rebuttal. In that context, explained the court, the evidence of his 1997 on-line conduct was "very probative evidence."[2]

We therefore conclude there was no abuse of discretion in allowing evidence of defendant's 1997 on-line conduct as rebuttal under section 1101, subdivision (b). (See, e.g., *People v. Branch* (2001) 91 Cal.App.4th 274, 281 (*Branch*) [testimony about uncharged past sexual misconduct was admissible under section 1101, subdivision (b), as relevant to defendant's intent in touching the victim of the charged offenses].)

As noted above, in his closing brief on appeal, defendant maintains section 1101, subdivision (b), has been "superseded" by section 1108. We see no indication in the

---

[2] Indeed, the trial court made it clear that if defendant's experts were only going to testify "there are adult chat lines where adults go on them and they talk about sex and it's not uncommon to play games on those chat lines, go ahead, the prior doesn't come in . . . if that's what you want, it doesn't say anything, but I don't care." The problem, as the trial court observed, was if the experts went beyond that and intimated "that people go to these web sites and have no intention of [d]oing things or they have no idea that they could possibly be speaking to minors or there's no reason to believe a minor would be that site." In short, the choice was left to defendant as to whether the experts' testimony would touch on matters as to which his 1997 online conduct would be relevant rebuttal.

record defendant ever advanced this argument in the trial court. Nor did he advance it in his opening brief on appeal. "Normally, we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived." (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 (*Bialo*).) This is particularly true as to evidentiary rulings. (See, e.g., *People v. Barnett* (1998) 17 Cal.4th 1044, 1121; *People v. Price* (1991) 1 Cal.4th 324, 430 ["[d]efendant may not challenge on appeal the admission of evidence on grounds not urged in the trial court"].)

Even had defendant preserved the issue, we would not be persuaded. Defendant relies on *People v. Robertson* (2012) 208 Cal.App.4th 965 (*Robertson*), in contending section 1108 has superseded section 1101, subdivision (b). However, in *Robertson*, the challenged evidence was admitted under section 1108—whether it also could have been admitted under section 1101, subdivision (b), was never considered. (*Robertson*, at p. 971; see *Siry Investments, L.P. v. Farkhondehpour* (2015) 238 Cal.App.4th 725, 731 ["cases are not authority for propositions they did not consider"].)

Moreover, as *Robertson* observed, in 1995, the Legislature enacted section 1108 " 'to *expand* the admissibility of disposition or propensity evidence in sex offenses cases.' " (*Robertson*, *supra*, 208 Cal.App.4th at p. 989, italics added, quoting *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) Thus, section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." Section 1108, subdivision (c), goes on to state that "[t]his section *shall not be construed to limit the admission or consideration of evidence under any other section of this code.*" (Italics added; see, e.g., *Green v. State of California* (2007) 42 Cal.4th 254, 260 [A "statute's plain meaning controls the court's interpretation unless its words are ambiguous."]; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 ["[i]f

10

the language is clear and unambiguous there is no need for construction].)  This unambiguous language plainly leaves section 1101, subdivision (b), as an alternative means to present evidence of past sexual misconduct evidence if the requirements of that section are satisfied.  (See, e.g., *Branch*, *supra*, 91 Cal.App.4th at pp. 280–281 [ruling uncharged past sexual acts "admissible under both sections" 1101(b) and 1108].)

Because the trial court did not abuse its discretion in ruling the evidence of defendant's 1997 on-line conduct was admissible under section 1101, subdivision (b), to show knowledge, intent, and the absence of mistake in connection with the charged offenses, we need not, and do not, consider whether that evidence was also admissible under section 1108.  (See *People v. Story* (2009) 45 Cal.4th 1282, 1295.)

***Section 352***

Defendant contends that even if evidence of his 1997 on-line conduct was admissible under section 1101, subdivision (b), it should have been excluded as expert rebuttal evidence under section 352 because its probative value was substantially outweighed by the risk of undue prejudice, confusion of issues, and undue consumption of time.[3]  He maintains the trial court acknowledged the evidence was "too prejudicial" and insufficiently probative when it barred the prosecution from introducing it in its case-in-chief.

"In [*People v. Ewoldt* (1994) 7 Cal.4th 380, 404–406 (*Ewoldt*)], the Supreme Court discussed a number of factors that should be considered in making a judgment, pursuant to section 352, about admissibility of evidence of uncharged offenses, where introduction is sought under section 1101, subdivision (b)." (*Branch*, *supra*, 91 Cal.App.4th at p. 282.)  "[T]he probative value of the evidence must be balanced

---

[3]  Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its omission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

11

against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses." (*Ibid*.)

We have already discussed the probative value of the evidence of defendant's 1997 online conduct. As the trial court ruled, it was "very probative evidence" as to defendant's claim that he believed Maria was an adult, and not a minor as she and her mother repeatedly stated. Defendant contends the current case differs markedly from his 1997 conduct because in 1997 he was told at the outset of his on-line communications he was communicating with an underage girl and with a purportedly underage girl (the minor's mother). Here, however, he met Maria through an adult chat line and she initially said she was 19. However, less than 30 minutes into the exchange (which lasted roughly 24 hours), Maria told him she was, in fact, not an adult. She later reiterated this point, never again asserted she was an adult, and the substance of her chatting gave every indication she was, indeed, school-aged. Defendant, moreover, never expressed any concern on receiving Maria's communications that she was underage, except to ask, "You okay with me being older[?]" When Maria replied "Yes," he immediately launched into sex chat, asking things like "do you watch porn ever and masturbate" and stating "I love masturbating and cumming." He also volunteered that he "love[d] high school girls."

While defendant maintains he reasonably retained complete confidence in Maria's initial assertion she was an adult, evidence of his 1997 conduct was highly probative this was not true. The evidence strongly rebutted his assertion he had been operating under a mistake or with innocent intent. Having been previously contacted by the police, specifically warned against sending sexually explicit online communications to minors, and counseled about the potential harm for the minor, one might reasonably have expected him to have immediately ended any communication with a sex chat partner who

12

told him she was underage, particularly one who said several times she was underage and whose conversation had all the earmarks of that of a school aged girl and lacked any trace of adult sophistication.

The probative value of the evidence of defendant's 1997 conduct is increased by the fact that its source was independent of the evidence of the charged offense. (*Ewoldt*, *supra*, 7 Cal.4th at p. 404.) As the Supreme Court observed in *Ewoldt*, "if a witness to the uncharged offense provided a detailed report of that incident without being aware of the circumstances of the charged offense, the risk that the witness's account may have been influenced by knowledge of the charged offense would be eliminated and the probative value of the evidence enhanced." (*Ibid.*) Here, it is undisputed the 1997 incidents involved another minor and her mother, who independently contacted the police long before the events giving rise to the current charges. There is no risk, therefore, that their account was influenced by knowledge of the pending charges, and this enhanced the probative value of the 1997 conduct.

"On the other side of the scale, the prejudicial effect of this evidence is heightened by the circumstance that defendant's uncharged acts did not result in criminal convictions. This circumstance increased the danger that the jury might have been inclined to punish defendant for the uncharged offenses, regardless of whether it considered him guilty of the charged offenses, and increased the likelihood of 'confusing the issues.' " (*Ewoldt*, *supra*, 7 Cal.4th at p. 405; but see, e.g., *Bryant*, *supra*, 60 Cal.4th at p. 406 [evidence of past uncharged misconduct may be admissible subject to a limiting instruction]; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42 (*Frazier*) [the risk a jury might punish the defendant for uncharged crimes "is counterbalanced" by jury instructions, for example, directing that "the jury 'must not convict the defendant of any crime with which he is not charged' "].) In this case, the trial court accounted for the risk by barring evidence of defendant's 1997 conduct from the prosecution's case in chief. It ruled the evidence would be admitted exclusively as rebuttal and only if defendant's

13

experts opened the door by suggesting anyone engaged in online age-related role-play would have no reason to suspect a partner was underage. This limitation on use of the evidence was well within the court's discretion. (See, e.g., *People v. Scally* (2015) 243 Cal.App.4th 285, 292–293 [evidence properly admitted under section 1101, subdivision (b), as rebuttal to show the defendant's intent, i.e., that he "was not a victim of his own ignorance"].)

Nor is this a case where the evidence of the prior misconduct was stronger than the evidence supporting the new charges. Although in 1997 defendant was told at the outset of the communications he was communicating with "minors," Maria told him the same thing within 30 minutes of their 24 hour chat marathon. Furthermore, after being told several times he was chatting with a minor, defendant followed through on discussions about meeting her, planning a specific time and place, and then driving 45 miles, to see her, even after receiving a message (from Maria's mother posing as Maria) that she was just 13 years old. If anything, the evidence in the current case was significantly more alarming, reducing the prejudicial effect of the 1997 evidence. (*Ewoldt*, *supra*, 7 Cal.4th at p.405 [the potential for prejudice is decreased if evidence of the uncharged acts was "no stronger and no more inflammatory" than evidence of the charged offense].)

The fact that defendant's previous misconduct occurred about 16 years before the trial, although weighing against admission, is "not itself dispositive." (*People v. Loy* (2011) 52 Cal.4th 46, 62.) "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*Branch*, *supra*, 91 Cal.App.4th at p. 284 [allowing evidence of past offenses despite a 30-year gap].) In *People v. Ing* (1967) 65 Cal.2d 603, 612, the Supreme Court "held admissible evidence of uncharged misconduct even though one of the prior offenses was committed 15 years before the charged offense." (*Ewoldt*, *supra*, 7 Cal.4th at p. 405; see, e.g., *People v. Cordova* (2015) 62 Cal.4th 104, 133 [18-year gap did not alone compel exclusion of

evidence of past offense]; *Robertson*, *supra*, 208 Cal.App.4th at p. 992 [34-year gap was not "too remote to have probative value"].)

Moreover, "significant similarities" between prior misconduct and the charged offenses may " 'balance[] out the remoteness.' " (*Branch*, *supra*, at p. 285, quoting *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395; accord, *Robertson*, *supra*, 208 Cal.App.4th at p. 992.) In this case, defendant's communications with Maria were very similar in content to his 1997 communications. In each instance, his sex chat partners told him early on they were minors. Each time he expressed pleasure rather than concern on receiving the information, remarking in 1997, "nice age" and "I like younger women!" , and to Maria saying, "I love younger" and "Awesome" when Maria said she was 17. In each instance, defendant asked about the girl's physical appearance, requested a photo, and asked if he could call to talk directly by phone.

His sexually explicit communications with the ostensible 17 year old in 1997 and with Maria in 2013 also covered similar ground. He asked them to call him, talked about meeting, suggested they could "learn" from him, offered to "kiss" and "touch" them, asked if they masturbated, referred to their "clit", suggested they watch him masturbate, suggested oral sex,and suggested they keep their communications with him secret from their parents. In short, the substantial similarities in the content of defendant's messages balance out the remoteness of the 1997 conduct. (See, e.g., *Robertson*, *supra*, 208 Cal.App.4th at p. 992 ["striking similarities" between past and current offenses balanced out the 30-year gap].)

Finally, defendant contends admitting evidence of his 1997 conduct would have required a "mini-trial," lasting as long or longer than that required for the 2013 charges, involving testimony from multiple witnesses, and causing him unfair prejudice. The prosecution advised the trial court, however, it would only have to present testimony of two witnesses, specifically the then 16-year-old's mother (the ostensible 17-year-old) and a police officer. In comparison, it called 10 witnesses to present evidence of the conduct

15

underlying the charged offenses.  Moreover, defendant concedes the basic underlying facts regarding the 1997 communications and has not indicated he would have testified or called additional witnesses in response.  It does not appear, therefore, it would have required an undue amount of time to present the rebuttal evidence.  (See, e.g., *Frazier*, *supra*, 89 Cal.App.4th at p. 42 [declining to find undue consumption of time where three victims' testimony of past uncharged offenses consumed 182 pages of reporter's transcript, or 27 percent of the total trial transcript].)

In sum, there was no abuse of discretion in the trial court's weighing analysis under section 352.

### *Due Process and Right to Present a Defense*

Given our conclusion that the trial court did not abuse its discretion in allowing evidence of defendant's 1997 conduct could be introduced on rebuttal, we likewise conclude defendant's constitutional due process rights were not compromised.  The " ' "routine application of state evidentiary law does not implicate [a] defendant's constitutional rights." [Citation.]' [Citation.]" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1289.)  Here, defendant's constitutional argument relies entirely on the contention that his 1997 conduct was inadmissible.  Because we affirm the trial court's ruling that the evidence was admissible as potential rebuttal, the constitutional claim necessarily also fails.  (See, e.g., *Fuiava*, *supra*, 53 Cal.4th at p. 670.)

**DISPOSITION**

The judgment is affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.