[No. E023787. Fourth Dist., Div. Two. Apr. 20, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK JOHN WAPLES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3.a., 3.b., 3.c., 3.d., 3.e., 4. and 5.

COUNSEL

Stuart A. Skelton, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—A jury convicted Patrick John Waples of kidnapping a minor to commit a lewd and lascivious act (Pen. Code, § 207, subd. (b)),

eight counts of committing a lewd and lascivious act on a minor (Pen. Code, § 288, subd. (a)) and five counts of forcibly committing a lewd and lascivious act on a minor (Pen. Code, § 288, subd. (b)). As to the convictions involving victim Ashley, the jury further found that Waples had kidnapped her for the purpose of committing a sexual offense (Pen. Code, § 667.8, subd. (b)), kidnapped her in violation of Penal Code section 207 (Pen. Code, § 667.61, subd. (e)(1)) and had been convicted of another Penal Code section 667.61, subdivision (c) offense against more than one victim in this case (Pen. Code, § 667.61, subd. (e)(5)). As to the remaining offenses, the jury also made the last mentioned finding. Waples was sentenced to prison for four consecutive 25-year-to-life terms, three consecutive 15-year-to-life terms and 25 years. He appeals, claiming evidence was erroneously admitted, the evidence was insufficient to sustain some of the verdicts, the jury was misinstructed and sentencing error occurred. We reduce some of Waples's convictions, stay the term for one of the counts, remand the matter for resentencing and confirm the remaining convictions.

The facts concerning this case will be discussed as they are pertinent to the issues raised.

ISSUES AND DISCUSSION

1. *Admission of Prior Acts*

In their moving papers in support of the admission of evidence of prior acts of molestation by Waples, the People represented that Waples used his skills as one who shoes and trains horses to insinuate himself into families with young girls.[1] They alleged that he often offered his services in exchange for a place to spend the night, which gave him access to the victims. This is what occurred in the summer of 1995, when Waples was present in the home of eight-year-old Jennifer, who was hosting a "sleep-over" with 10-year-old Alexandria and Keeli and nine-year-old Tasha, all alleged victims of the instant crimes.[2] Waples slept on the couch in the living room where the victims were also sleeping, which is also where the television and videocassette recorder were located. Waples was also friends with Alexandria, having also met her and her mother through horse activities. During the sleep-over, he had the victims touch his penis, put his penis in their mouths, and attempted to vaginally penetrate two of them. He also touched their chests and genital areas and the derrière of one of the victims.

---

[1]The defense never challenged the accuracy of the facts as they were represented by the People.

[2]Although the People alleged Waples had committed three offenses against Jennifer, the jury found him not guilty as to them.

In August of the same year, Waples took seven-year-old Ashley, another victim in the instant case, with whose mother he had had a relationship for several years and whom Waples had taken care of in the past, on a camping trip in his truck. On the way, he "French-kissed" Ashley and had her touch his penis and put it in her mouth until he ejaculated, while holding her head. That night, he had Ashley sleep with him in the camper shell of his truck. Both were naked. After he showed her Playboy magazines, depicting sex acts between males and females and between females, he asked her if she wanted to have sex. He lay on top of her and put his penis between the lips of her vagina. He had her orally copulate him and he slapped her on the derrière, telling her to "finish the job." The next morning, Waples rubbed oil on his penis and had Ashley do the same. He touched Ashley's vagina and behind 20 times each, saying he was conducting "pussy checks" and "butt checks." He touched her chest and had her orally copulate him. He asked her if she "wanted to have some cock today . . . ." While fishing, he threw fish against the rocks, scaring Ashley. The second morning of the fishing trip, Waples again rubbed his penis with oil and had Ashley rub and kiss it. The "butt checks" and "pussy checks" continued. On the ride home, Waples had Ashley orally copulate him while holding her head. Waples had also molested Ashley before the camping trip.

The prior acts involved a victim named Christina who was between the ages of seven and 14 when Waples molested her during the years 1970 to 1977. At the time of trial, she was 35. When Waples molested her, he was married to her older sister. Both females were horse enthusiasts. When Christina visited her older sister, she would sleep on the couch in the living room. Waples would stay up, purportedly to watch television, after his wife went to bed. When Waples was certain his wife was asleep, he would molest Christina. Included in the acts Waples performed on Christina were pressing his penis against her rectal area; holding her head while having her orally copulate him; digitally penetrating her vagina; using Vaseline as a lubricant when masturbating himself or having Christina masturbate him; using his saliva as a lubricant when digitally penetrating Christina's vagina and rectum; showing Christina "porn" magazines depicting sex acts between males and females and between females, who had shaved pubic areas; and lying on top of Christina and pressing his penis into her vagina and ejaculating on her stomach. During the molestations, he would speak to Christina as though she were his lover. His interest in her waned as she grew older and developed breasts and grew pubic hair, which he asked her to shave. He was violent towards animals in her presence. Christina learned that Waples had also molested her nine-year-old cousin during a family camping trip. The act(s) occurred in a camper while the victim's parents were nearby. Waples also molested Christina and two of her friends during a sleep-over the latter

hosted. The friends' parents had allowed Waples to sleep in the living room, where the girls were. The parents were at home at the time. Christina had not reported the molestations until sometime during the year preceding the instant trial.[3]

The People represented that only Christina would testify as to the acts of molestation involving her and that her testimony would take about three hours. They urged that the jury be given a limiting instruction on its use of this evidence. They predicted that the defense would attempt to suggest that the victims of the current offenses were lying or mistaken about their molestations.

The trial court ruled the evidence of Waples's molestation of Christina was admissible, concluding that Evidence Code section 1108, subdivision (a)[4] was not unconstitutional, the probative value of the evidence outweighed its prejudicial impact, it would not be unduly consumptive of time nor would it confuse the jury (or a limiting instruction would prevent any confusion), it was not too remote and it was also admissible under Evidence Code section 1101, subdivision (b) to show intent, common scheme, design or plan. Waples here contests the trial court's ruling on some of the grounds enunciated by the court.

### a. *Constitutionality of Evidence Code Section 1108*

 Waples reasserts the argument he made below that Evidence Code section 1108 is unconstitutional. We disagree.

Recently, in *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), the California Supreme Court rejected a due process attack on Evidence Code section 1108, similar to the one advanced by Waples. As to Waples's equal protection attack on Evidence Code section 1108, we note that while *Falsetta* did not involve this issue, therein the California Supreme Court said, "[*People v.*] *Fitch* [(1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753]] . . . rejected the defendant's equal protection challenge, concluding that the Legislature reasonably could create an exception to the propensity rule for sex offenses, because of their serious nature, and because they are usually committed secretly and result in trials that are largely credibility contests. [Citation.] As *Fitch* stated, 'The Legislature is

---

[3]According to the defense, this delayed reporting followed a nervous breakdown Christina suffered.

[4]Evidence Code section 1108, subdivision (a), provides as follows: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

free to address a problem one step at a time or even to apply the remedy to one area and neglect others. [Citation.]' [Citations.]" (*Falsetta, supra,* 21 Cal.4th at p. 918.) For the reasons best expressed in *Fitch,* which were endorsed in *Falsetta,* we reject Waples's equal protection attack on Evidence Code section 1108.[5] (Accord, *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 140 [89 Cal.Rptr.2d 28], review den. (*Van Winkle*).)

b. *Evidence Code Section 352*

■ Waples contends that the trial court abused its discretion in admitting the evidence of his molestations of Christina. First, he contends that this evidence was extremely prejudicial.[6] However, we do not agree that it was any more inflammatory than the evidence of the current molestations, which involved five victims. Waples's assertion that Christina's testimony was "not relevant to any disputed fact at issue" is simply untrue. The defense attempted to paint the victims as either liars or terribly mistaken in their reports that he molested them. The use of Christina's testimony both as propensity evidence and to show common scheme or plan was highly relevant to this. Waples reiterates the point he made below that the molestations of Christina were remote in time. However, he also acknowledges that 20 years is not too remote. (*People v. Harris* (1998) 60 Cal.App.4th 727 [70 Cal.Rptr.2d 689]; *People v. Burns* (1987) 189 Cal.App.3d 734 [234 Cal.Rptr. 547].) Moreover, the similarities between the prior and current acts, a matter which Waples does not here dispute, balanced out the remoteness. Finally, as to confusion, the fact that this jury was not informed that Waples was never punished for molesting Christina provided the trial court with more reason to admit her testimony than had it been told the truth that he had not.

c. *Admission to Prove Common Scheme or Plan*

Waples reiterates the argument he made below, which was rejected by the trial court, that the points of similarity between the molestations of Christina and of the victims of the charged offenses were insufficient to permit

---

[5]We note that resolution of the equal protection argument is still pending in *People v. Ritson*■ (Cal.App.) review granted August 12, 1998, S071200, *People v. Davis,* review granted August 25, 1999, S079736 [following an opinion by this court]), and *People v. Pierce** (Cal.App.) review granted October 6, 1999, S081047.

[6]Absent a second objection at trial to the admission of this evidence based on trial testimony that is assertedly highly prejudicial (i.e., that Waples was violent towards Christina), which Waples does not allege occurred, we cannot assess the propriety of the trial court's pretrial ruling in light of this evidence. (See *People v. Barnard* (1982) 138 Cal.App.3d 400, 405 [188 Cal.Rptr. 176]; *In re James V.* (1979) 90 Cal.App.3d 300, 304 [153 Cal.Rptr. 334].)

admission to show common scheme or plan. We believe our reiteration of the facts surrounding each is sufficient to show otherwise.[7]

### 2. *Jury Instructions as to Prior Acts*

██ For purposes of using the evidence of Waples's molestations of Christina to show his propensity for committing the instant offenses, the jury was instructed as follows:

"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused.

"Within the meaning of the preceding instruction[s], the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed [sexual offense[s]] other than [those] for which [he] is on trial.

"You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other [sexual offense[s]]."

Adopting the analysis of two appellate opinions from the First District, which have since been depublished,[8] Waples contends that the foregoing instructions permitted the jury to convict him of the charged offenses on less than proof beyond a reasonable doubt. In contrast to the holdings of these

---

[7]Waples makes a valid point that since intent was not disputed, the evidence should not have been admitted for that purpose. However, the fact that it was relevant to show common scheme or plan and propensity, and, thus, that Waples committed the crimes, renders its admission to show intent nonprejudicial.

[8]They are *People v. Guzman* (June 28, 1999, A079259, review den. and opn. ordered nonpub. Oct. 20, 1999) and *People v. Bersamina* (July 27, 1999, A082268, review den. and opn. ordered nonpub. Oct. 20, 1999). We note that in the wake of these now defunct decisions, CALJIC No. 2.50.01 has, since this trial took place, been amended to include a provision that a finding by the jury by a preponderance of the evidence that the defendant had committed the prior acts was insufficient by itself to prove that the defendant committed the charged offenses beyond a reasonable doubt.

We note that review has been granted in *People v. Acosta*█ (Cal.App.) review granted August 18, 1999, S079731 and *People v. Watts*\* (Cal.App.) review granted December 2, 1998, S073741, both spousal abuse cases, which hold that instructions similar to the ones given here are proper.

Before oral argument, Waples submitted a list of cases on this matter which had been published or finalized after our tentative opinion was written. As he states, in *People v. Vichroy* (1999) 76 Cal.App.4th 92 [90 Cal.Rptr.2d 105], the Second District reaches a

depublished cases, *Van Winkle, supra,* 75 Cal.App.4th 133, concludes that they do not, saying, "[T]he instructions do *not* provide that the current crime may be proved by a preponderance of the evidence. Instead, they expressly provide that only the *prior crimes* must be proved by a preponderance of the evidence. (See CALJIC No. 2.50.01.)[9] Moreover, defendant's interpretation of CALJIC Nos. 2.50.01 and 2.50.1 would require every jury instruction addressing evidence or elements of a crime to refer to the reasonable doubt standard. This would render superfluous the instruction requiring the jury to '[c]onsider the instructions as a whole' and not to 'single out any particular sentence or individual point or instruction and ignore the others.' (See CALJIC No. 1.01.) . . .

"In *People* v. *Carpenter* [(1997)] 15 Cal.4th 312 [63 Cal.Rptr.2d 1, 935 P.2d 708], the California Supreme Court rejected an argument similar to that advanced by defendant in this case. In *Carpenter,* the defendant argued that the jury instruction permitting the jury to consider prior crimes proved by a preponderance of the evidence reduced the prosecution's burden of proof on the mens rea element of the offenses. (*Id.* at pp. 380, 383.) Noting that the standard instructions on reasonable doubt and on the sufficiency of circumstantial evidence for proving specific intent were also given at trial, the court concluded that the instructions as a whole were clear that the prosecution still had to prove intent beyond a reasonable doubt. (*Id.* at p. 383.)

"Defendant also argues that because there was no jury instruction requiring the prosecution to prove *every element of the crime* beyond a reasonable doubt, the inferences in the challenged jury instructions allow the jury to *aggregate* the People's proof on all elements in order to find proof beyond a

---

conclusion contrary to ours. We disagree with it. *People v. Orellano* (2000) 79 Cal.App.4th 179 [93 Cal.Rptr.2d 866] reaches the same conclusion.

Appellate counsel for Waples also calls our attention to the following nonfinal cases which agree with our conclusion: *People v. O'Neal* (2000) 78 Cal.App.4th 1065 [93 Cal.Rptr.2d 248] (5th Dist.); *People v. Regalado* (2000) 78 Cal.App.4th 1056 [93 Cal.Rptr.2d 83] (Div. 3 of this court); and *People v. Brown* (2000) 77 Cal.App.4th 1324 [92 Cal.Rptr.2d 433] (1st Dist., Div. 2). We appreciate counsel's candor in bringing these cases to our attention.

[9]The footnote at this point reads as follows: "The 1999 revision of CALJIC No. 2.50.01 now includes the following language: 'However, if you find [by a preponderance of the evidence] that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove [beyond a reasonable doubt] that [he] [she] committed the charged crime[s]. The weight and significance of the evidence, if any, are for you to decide.' (CALJIC No. 2.50.01 (1999 rev.) (6th ed. pocket pt.).) According to the Use Note to the revised version of CALJIC No. 2.50.01, the foregoing language was added 'to remove any confusion that might arise' in conjunction with CALJIC [No.] 2.50.1. (Use Note to CALJIC No. 2.50.01 (1999 rev.) (6th ed. pocket pt.) p. 15.) [¶] By emphasizing that the prosecution still has the burden of proving the current crime beyond a reasonable doubt, the modified jury instruction elucidates the different burdens of proof for the prior, as opposed to the current, crime. However, this modification does not change our analysis."

reasonable doubt in the People's *overall* case. Here, however, the court instructed the jury on reasonable doubt pursuant to CALJIC No. 2.90 and enumerated the elements of the charged offense that the People had to prove. (See, e.g., CALJIC No. 10.41.) Thus, based on the jury instructions considered as whole, the prosecution still had the burden of proving every element beyond a reasonable doubt and the jury could not convict defendant *solely* on proof of the other crimes. [Citation.]" (*Van Winkle, supra,* 75 Cal.App.4th at pp. 147-148, italics in original.) We agree with *Van Winkle.*

As in *Van Winkle,* other instructions given here made clear to the jury that it could convict Waples of the charged crimes only upon proof of them beyond a reasonable doubt. As the People correctly point out, during argument, both the prosecutor and defense counsel reminded the jury of its obligation to convict Waples of the charged offenses upon proof beyond a reasonable doubt, the former, even when discussing Waples's molestations of Christina. Based on the foregoing, we do not believe there is a reasonable likelihood that this jury believed it could convict Waples of the charged offenses without concluding beyond a reasonable doubt that he was guilty of them. (See *People v. Kelly* (1992) 1 Cal.4th 495, 525-526 [3 Cal.Rptr.2d 677, 822 P.2d 385].) The fact that the jury acquitted Waples of the offenses which involved Jennifer[10] suggests that it did not use preponderant proof of the molestations of Christina to convict him of molesting the current victims.

3. *Insufficiency of the Evidence*

a.-e.*

. . . . . . . . . . . . . . . . . . . . . .

4., 5.*

. . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The matter is remanded for resentencing in light of our staying punishment for count I, kidnapping to commit a lewd and lascivious act on a minor, presently designated as the principal term, and our reduction of the

---

[10]See footnote 2, *ante,* page 1392.
*See footnote, *ante,* page 1389.

convictions under Penal Code section 288, subdivision (b), in counts IV, V, X and XVII, to convictions of Penal Code section 288, subdivision (a). The remaining convictions are affirmed.

Hollenhorst, J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 9, 2000. Mosk, J., was of the opinion that the petition should be granted.