Filed 6/26/13  P. v. Gainey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055226 |
| v. | (Super.Ct.No. RIF140869) |
| HARRY CRAIG GAINEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Melissa Mandel and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendant Harry Craig Gainey was convicted of seven counts of lewd and lascivious conduct on a minor less than 14 years of age.  (Pen. Code,

1

§ 288, subd. (a).) The victims were John Doe and Jane Doe 2. The jury further found true that defendant committed the offenses against multiple victims within the meaning of Penal Code section 667.61, subdivision (e)(5). On December 2, 2011, defendant was sentenced to state prison for a total term of 105 years to life. He appeals, contending the trial court erred in admitting evidence of his prior uncharged conduct and his admission to being a registered sex offender.

## I. STATEMENT OF FACTS

In 2007 defendant lived in two different households. From February until May, he lived in John Doe's household. From July until his arrest in December, he rented a room in Jane Doe 2's household.

### A. Jane Doe 2

According to Jane Doe 2 (born in 2003), defendant touched her on her "pee-pee" with his hand. Defendant was interviewed on December 4, 2007. When he was asked questions about Jane Doe 2, he responded: "'What are you getting at?'" When the officer confronted defendant about Jane Doe 2's allegation, defendant adamantly denied it. Defendant claimed that he never picked her up, nor was he in close proximity to her except for a few times when he let her pet his dog. Defendant explained that he kept his distance because he was a registered sex offender. He said that he never had any problems with kids and "he never wanted to be accused of it." Defendant later admitted the possibility of touching her while she was petting his dog.

**B. John Doe**

One of Jane Doe 2's parents called John Doe's household and suggested the children should be questioned. According to John Doe (born in 1999), in 2007 defendant would have John Doe move his hands up and down defendant's penis while defendant did the same thing to John Doe's penis. This happened more than 10 times. Defendant also orally copulated John Doe five or six times. John Doe did not tell anyone because defendant threatened to kill his family if he did.

**C. Jane Doe 1**

Jane Doe 1 is defendant's 28-year-old daughter.[1] She met defendant in Oregon when she was six or seven years old. He had her watch him as he completely undressed. One time when she was swimming in a pool, he told her to get out because she was in trouble. He took her to a room and told her that she needed to be spanked. With her bathing suit on, he laid her on top of himself with his erect penis touching her vagina and spanked her. Another time while they were sitting on a park bench, he pulled his penis out and said, "'You are my daughter. You're supposed to know these things. I'm supposed to teach you—I'm supposed to teach this to you.'" He began telling her about his penis and said it was okay for her touch it and look at it because he was her dad. Defendant put his hand down her pants and told her that she had a vagina. Three to five months later, she told her grandmother. When she was between 10 and 13, while riding

---

[1] Jane Doe 1 was unavailable and so her testimony in defendant's first trial was read to the jury.

in the car with defendant, he would unzip his pants, take his penis out and play with it in front of her while he was driving. He would ask her questions while he did this.

### D. Defendant's Testimony

Defendant testified that in 1995 he was convicted of indecent exposure for urinating in a park. He denied molesting John Doe or threatening to harm his family if he told his parents. Defendant believed that John Doe's father had a problem with him (defendant).

Defendant also denied touching Jane Doe 2 in a sexual manner. He claimed the only contact he had with Jane Doe 2 was when he attempted to buckle her car seat strap between her legs. He dressed her no more than three times. He stated that because her mother was a drug addict who was not attentive to her daughter's needs, Jane Doe 2 would come out of the bathroom with her diaper and pants around her ankles and would ask defendant to pull them up.

Regarding his daughter's testimony, defendant claimed that all she ever wanted was to have a dad and that he was not there for her. He denied each allegation and claimed that if she had told her grandmother about the alleged incidents, he would have been arrested, because defendant's father-in-law did not like defendant and his arrest would have been his father-in-law's "payday."

### E. Rebuttal Evidence

According to Jane Doe 2's mother and her sister, in 2007 Jane Doe 2 sat in a booster seat with a strap across her lap, not a buckle between her legs. Also, only

4

immediate family placed Jane Doe 2 in her car seat. John Doe's father testified that he did not have a grudge against defendant.

## II. EVIDENCE OF DEFENDANT'S PRIOR UNCHARGED SEXUAL ACTS

Over defense objection, the trial court allowed the prosecutor to introduce evidence of defendant's prior molestation of his daughter, Jane Doe 1, under Evidence Code section 1108. The trial court noted that the evidence was relevant. Regarding remoteness, the court found that the prior incidents and charged incidents were closer in time than 20 years. Moreover, defendant was accused of being a person who, over time, was accused of doing the same kinds of activities that Jane Doe 1 would testify to. The court concluded the prior incidents were probative because defendant's intent would be an issue since his denial of the allegations called into question the credibility of the victims.

On appeal, defendant contends the trial court's ruling "was an abuse of discretion in violation of [his] right to due process and fair trial because it did not consider that propensity evidence in this case was unnecessary and cumulative given that [his] propensity had already been established by virtue of him being charged with molesting two unrelated victims." Moreover, he claims that the court erred in finding that "the evidence that [he] molested his daughter decades ago was more probative than prejudicial." He argues that because the prosecution's case against him was "not strong," the propensity evidence "had the effect of lightening the prosecution's burden of proof. . . . Thus, absent the admission of this evidence, it is reasonably probable that the jury would have reached a better result." We disagree.

5

## A. Standard of Review

Evidence Code section 1108 allows the admission of evidence of a defendant's commission of another sexual offense subject to the weighing process of Evidence Code section 352. Under that weighing process, the court considers, among other factors, "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time. [Citation.]" (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.) We review the trial court's ruling to admit evidence pursuant to an Evidence Code section 352 analysis under the deferential abuse of discretion standard. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1008.)

## B. Analysis

Applying the above standard, we conclude the trial court did not abuse its discretion in admitting defendant's prior uncharged offenses. Defendant does not challenge the trial court's finding that his prior offenses were not too remote. Rather, he contends the admission of the evidence violated due process because it was "cumulative and prejudicial since [defendant's] predisposition to molest children had already been

6

established by virtue of the fact that the was charged with molesting two different children from two different counties." However, propensity evidence "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have." (*United States v. LeMay* (9th Cir. 2001) 260 F.3d 1018, 1027; see also *People v. Wilson* (2008) 44 Cal.4th 758, 797 [noting analogous value of the due process analysis in *LeMay*].) Propensity evidence is highly relevant to dispute a defendant's attempt to paint current victims of sexual offenses as liars or mistaken in their claims of molestation. (*People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 (*Waples*) [Fourth Dist., Div. Two].)

In *Waples*, the defendant was charged with molesting several girls in 1995 ranging in ages from seven to 10 years. (*Waples*, *supra*, 79 Cal.App.4th at pp. 1392-1393.) Prior to trial, the prosecutor moved to admit evidence that 25 years prior to the charged offenses, the defendant molested his former sister-in-law over the course of seven years. (*Id.* at pp. 1393-1394.) The prosecutor argued that the evidence was admissible under Evidence Code section 1108 because it was probative since "the defense would attempt to suggest that the victims of the current offenses were lying or mistaken about their molestations." (*Waples*, *supra*, at p. 1394.) The trial court agreed and we affirmed (*id.* at p. 1395), stating: "The defense attempted to paint the victims as either liars or terribly mistaken in their reports that he molested them. The use of [the sister-in-law's] testimony both as propensity evidence and to show common scheme or plan was highly relevant to this." (*Ibid.*)

7

Here, as in *Waples*, evidence of the uncharged prior acts involving Jane Doe 1 was relevant because defendant denied the charges of molesting the victims, calling into question their credibility. Moreover, given the significant similarities in both the charged and uncharged conduct, any prejudice was far outweighed by the probative value. As the People point out, while the jury was entitled to consider both the charged acts and the uncharged prior acts to establish propensity, the jury was never instructed on this, nor did the attorneys argue it. Instead, the jurors were instructed they could consider defendant's prior uncharged conduct as propensity evidence. (CALCRIM No. 1191 [Evidence of Uncharged Offense].) It is presumed the jury followed the instructions. (*People v. Bennett* (2009) 45 Cal.4th 577, 612.) Moreover, the jury was instructed that it had the authority to disregard the propensity evidence if it found the prosecution had not met its burden of proving the prior offenses by a preponderance of the evidence. The jurors were further instructed that even if they found that defendant had committed the prior offenses, they may only use such evidence to determine defendant's credibility, and that the evidence may not be used as proof of defendant's guilt in the instant case. Again, absent a showing to the contrary, we presume the jury followed the trial court's instructions.

Accordingly, the trial court did not abuse its discretion in admitting the evidence of defendant's prior uncharged offenses against Jane Doe 1.

### III. EVIDENCE THAT DEFENDANT WAS A REGISTERED SEX OFFENDER

Following defendant's arrest, he was interviewed by police. Defendant stated that he never picked up Jane Doe 2, and he was hardly ever in close proximity to her. He said

8

his contact with her was limited to when he let her pet his dog. He explained the reason he kept his distance was because he was a sex offender registrant and he never wanted to be accused of child molestation. Before trial, the prosecutor moved in limine to admit defendant's admission on the grounds it was his self-proclaimed reason as to why he was never near Jane Doe 2. Defense counsel objected, arguing the evidence was "completely collateral"; however, "to the extent it may have some tangential relevance[, such] relevance is substantially outweighed by any prejudicial effect that it may have." The trial court allowed the evidence "because it's the defendant's excuse why he didn't do something, and that can be shown to the contrary obviously." The court concluded the evidence was relevant and its probative value outweighed any prejudicial effect.

On appeal, defendant contends the trial court abused its discretion in admitting the evidence because it "had no bearing on his credibility or on any material issue in the trial." Instead, he argues, the evidence "only served to label [him] as a recidivist sex offender, which unduly prejudiced the jury against him."

### A. Standard of Review

Only relevant evidence is admissible at trial, and trial courts have broad discretion to determine the relevance of proffered evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 933.) "Evidence Code section 352 accords the trial court broad discretion to exclude even relevant evidence 'if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' 'Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable "risk to the

9

fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.] We review a trial court's ruling under Evidence Code section 352 for an abuse of discretion. [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 893.)

### B. Analysis

According to defendant, there is no relevance to the evidence that he is a registered sex offender. We disagree. As the People note, defendant's statement to the police admitting he was a registered sex offender was relevant for impeachment purposes. The trial boiled down to a credibility contest. Before trial it was determined that either defendant would take the stand, or his testimony in the first trial, which resulted in a hung jury, would be admitted. In the first trial, defendant testified that because Jane Doe 2's mother was inattentive, he had lots of contact with Jane Doe 2. He dressed her, pulled up her diaper and pants, buckled her into her car seat, and made her breakfast. In the second trial, defendant testified that he attempted to buckle Jane Doe 2 in her car seat, he would help her pull up her diaper and pants, and he would make her breakfast. However, in his interview with the officer, defendant denied having much contact with Jane Doe 2, using his registered sex offender status as his reason for limiting contact. Accordingly, the evidence of his admission to being a registered sex offender as the reason why he had very limited contact with Jane Doe 2 was relevant. While there may be some prejudice resulting from the admission of this evidence, given the credibility contest, the probative value of this evidence outweighed its prejudicial effect.

For the above reasons, we conclude the trial court did not abuse its discretion in admitting evidence that defendant was a registered sex offender.

10

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

|                                  |
|----------------------------------|
| HOLLENHORST                      |
| Acting P. J.                     |

We concur:

RICHLI
                 J.

MILLER
                 J.