Filed 12/15/20  P. v. Edem CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ENEFIOK JOSEPH EDEM, Jr.,<br><br>Defendant and Appellant. | B299445<br><br>(Los Angeles County<br>Super. Ct. No. LA085808) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge.  Affirmed.

Spolin Law, Aaron Spolin and Caitlin Dukes for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Enefiok Joseph Edem, Jr., of sex offenses against two victims. He contends on appeal that the trial court abused its discretion by admitting evidence of an uncharged act and that there is insufficient evidence to support his conviction. We reject both contentions.

## BACKGROUND

I. The sexual assaults

Edem was charged with committing sexual offenses against Sonora G. and Yesica L.

A. *Sonora G.*

In the early morning of June 8, 2015, Sonora G. fell asleep on a train, and her phone was stolen. She got off the train in North Hollywood and took methamphetamine. Edem, using a false name, approached Sonora G., and they talked. Sonora G. vaguely recalled smoking marijuana with him. He offered her a ride home in his car, which he said was parked a few stops down the line. They took the train to where he had parked his car, a beige SUV. Because it was hot outside, Sonora G. removed her tights. She was not wearing underwear.

They drove around, stopping to buy vodka, which they both drank. Edem repeatedly said he wanted to have sex with Sonora G., but she made it clear she did not want to have sex with him. He suggested they go to Griffith Park to hang out before he took her home.

At Griffith Park, they parked and talked. When Sonora G. said she wanted to go home, Edem instead drove to a secluded area in the park where he demanded sex and pulled on her legs and clothes. The more she said no the more aggressive he became. Scared, she ultimately said, "fine." He asked if she had

2

condoms. She did, so he put one on and penetrated her vagina with his penis. He ejaculated into the condom.

Edem then drove to another area in the park near tennis courts. Sonora G. got out of the car, but he persuaded her to get back in by saying he would drive her home. Instead, he drove to another area in the park where he masturbated and told her to expose her genitals. Scared, she complied. Sonora G. used Edem's phone to call her sister, who told her to run, so Sonora G. did.

Sonora G. was able to get a ride to her friend's house. Her friend testified that when Sonora G. arrived, she looked horrible and was incoherent. Sonora G. told her friend she had been raped.

Sonora G. reported the rape to the police and identified Edem from a photographic lineup.

In June 2015, Edem was wearing a GPS tracking device. The tracking system showed that Edem was in Griffith Park at times and locations coinciding with Sonora G.'s account.

B. *Yesica L.*

On Easter morning April 16, 2017, Yesica L. was at a bus stop. Edem, whom she did not know, drove up to her in a beige van or SUV and asked if she wanted a ride. At first, she declined the offer. But, when he said he had marijuana, she agreed. He addressed her reservations by saying it was Easter and he had kids. He drove them to nearby train tracks. Once there, he repeatedly asked her to "suck him up." She refused and told him that she was leaving. When she tried to get out of the car, he put his hand on her neck, pushed her back, and said he was going to kill her.

3

Edem repeatedly tried to pull her pants down, but she would pull them back up.  He touched her labia.  To distract him, Yesica L. begged him to think about his mother.  Yesica L. grabbed a knife from her backpack, and they struggled over it.  She bit his arm, and in doing so, noticed he had a baseball league tattoo.  Edem then "got a scary look" that made Yesica L. think he was done negotiating.  To buy herself time, she told him she would cooperate if he gave her some weed.  He drove the car closer to the train tracks near a dead end.  He began masturbating and asked Yesica L. to touch his penis.  Yesica L. escaped from the car and called 911.  The responding officers found Yesica L., upset.

The next day, officers arrested Edem and took him for a sexual assault examination.  Yesica L.'s DNA was on his hand.

Yesica L. identified Edem from a photographic six-pack.

C.    *The prior uncharged act, Bianca G.*

The People introduced evidence of a prior uncharged act.  In October 2006, Bianca G. was attending city college.  To get to class, she took the bus.  On one occasion when she got off the bus, Edem, whom she had never met, asked if he could talk to her.  He gave her a false name.  After a brief conversation, she agreed to meet him after class ended that night.  When her class was done, Edem was waiting for her with alcohol and tobacco wraps containing marijuana.  He led her to the rooftop where they drank, smoked, and talked.  When told him she was ready to go home, he said she could not leave until she hugged him.  When she refused, he grabbed her by the wrists, pushed her down, and put one hand around her throat and the other over her mouth.  He told her to be quiet and it would be over quick.  He then penetrated her with his penis.

4

Later, Edem admitted to a detective that he raped Bianca G. but that "she wasn't worth it" because her menstrual blood got on his shirt.

## II. Verdict and sentence

A jury found Edem guilty of kidnapping to commit rape or forcible oral copulation of Yesica L. (Pen. Code,[1] § 209, subd. (b)(1); count 1), sexual battery by restraint of Yesica L. (§ 243.4, subd. (a); count 2), forcible rape of Sonora G. (§ 261, subd. (a)(2); count 3), assault with intent to commit rape or forcible oral copulation of Yesica L. (§ 220, subd. (a)(1); count 4), and attempted forcible rape of Yesica L. (§§ 664, 261, subd. (a)(2); count 5).

On June 5, 2019, the trial court sentenced Edem to an indeterminate term of 64 years to life plus a determinate term of 17 years.

## DISCUSSION

## I. Admission of uncharged offenses

Over Edem's objection, the trial court admitted evidence of his 2006 rape of Bianca G. after finding that the uncharged offense bore a high degree of similarity to the charged offenses and was not unduly prejudicial. Edem now contends that the trial court abused its discretion by admitting the evidence. We disagree.

Generally, evidence of prior criminal acts is inadmissible to show a defendant's disposition to commit such acts. (Evid. Code, § 1101, subd. (a).) Evidence Code section 1108 creates an

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

exception to the rule. That section provides that evidence of other sex offenses in a sex crime prosecution is admissible so long as it is not unduly prejudicial under Evidence Code section 352. (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823.) Admissibility of uncharged acts depends on (1) whether the propensity evidence has probative value in that it is similar enough to the charged behavior to tend to show the defendant committed the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry; and (5) whether admitting the propensity evidence will require an undue consumption of time. (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.) A trial court balances the first factor of probative value against the prejudicial and time-consuming effects of the evidence, as measured by the second through fifth factors. (*Ibid.*)

We review a challenge to a trial court's admission of such evidence for abuse of discretion. (*People v. Daveggio and Michaud*, *supra*, 4 Cal.5th at p. 824.)

Here, Edem's prior assault of Bianca G. was highly similar to his later assaults of Sonora G. and Yesica L. In all three incidents, Edem targeted women at transit stops, either bus stops or a train station. He then took them to isolated locations, a rooftop in Bianca G's case, a secluded park parking lot in Sonora G.'s case, and train tracks in Yesica L.'s case. He plied all three women with marijuana and/or alcohol. Before assaulting them, he engaged in friendly conversation before demanding sex

6

or oral copulation.  He gave a false name to Bianca G. and to Sonora G. In none of the crimes did Edem use a weapon.

Despite these similarities between the charged and uncharged acts, Edem nonetheless argues that the trial court abused its discretion because the 2006 rape of Bianca G. occurred nine years before Sonora G.'s assault and 11 years before Yesica L.'s assault.  However, the remoteness of the uncharged act does not by itself render it inadmissible.  (*People v. Soto* (1998) 64 Cal.App.4th 966, 991.)  Even the lapse of 20 years between an uncharged and charged acts may not be too remote. (*People v. Waples* (2000) 79 Cal.App.4th 1389, 1395.)  Moreover, the similarity between the rape of Bianca G. and the later sexual offenses on Sonora G. and Yesica L. balances out any remoteness. (See, e.g., *ibid.*)

Nor can we agree with Edem's other argument that the uncharged act was more inflammatory than the charged acts.  By pointing to evidence he grabbed Bianca G. by the wrists, held her by her throat, told her not to scream, and then raped her, he appears to suggest that crime was more violent than the charged offenses.  However, he engaged in similar violent behavior with Sonora G. and Yesica L.  He pulled on Sonora G.'s pants and legs and raped her.  He also tried to pull down Yesica L.'s pants, grabbed her by the throat to prevent her from fleeing the car, struggled with her, and threatened to kill her.  Although Yesica L. was able to escape, these acts plus Edem's demand that Yesica L. orally copulate him made clear his intent to sexually assault her.  Therefore, the incident with Bianca G. was not more inflammatory than the charged crimes.  No abuse of discretion occurred.

7

II.    Sufficiency of the evidence

Edem next contends there is insufficient evidence he committed any of the crimes.  The contention is meritless.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)  We may not reevaulate a witness's credibility or reweigh the evidence on appeal.  (*People v. Brown* (2014) 59 Cal.4th 86, 106.)  "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.)

Edem's argument that there was insufficient evidence to support his conviction of the crimes rests on his assertion that Sonora G. and Yesica L. lied about material facts such that the jury had to disregard the entirety of their testimony.  As for Yesica L., Edem argues that she lied about biting him.  Edem points to the testimony of the nurse who examined him the day after the assault.  However, the nurse's testimony was not as unambiguous as Edem makes it out to be.  She first said on direct examination that she was "not actually sure" she saw a bite mark

8

but then agreed on cross-examination she did not see one. When asked to confirm she did not see a bite mark, she said, "I didn't review the photos, *so I can't really say that.* I don't want to confuse anybody. But in my report it said, swabbed per history." (Italics added.) Even if the nurse unambiguously contradicted Yesica L., we would be no more persuaded that this conclusively established that Yesica L. lied. Her bite may have left no mark.[2]

Edem next points to another supposed discrepancy between Sonora G.'s and her friend's testimony. Sonora G. said that someone stole her phone while she was asleep on the train. How then, Edem asks, could she have called her friend early that morning, as her friend testified? There are numerous explanations. Perhaps Sonora G. called her friend *before* her phone was stolen. Maybe she or her friend were confused about when the call occurred. Or maybe Sonora G. used a stranger's phone to call her friend. Indeed, Sonora G. said that she used a stranger's phone to call her sister, so it is not impossible she also called her friend from it.

In any event, to the extent there were conflicts in the evidence, it was the jury's job to resolve them. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67.) A jury may reject part of a witness's testimony and combine the accepted part with other testimony, weaving a cloth of truth from the evidence. (*Id.* at pp. 67–68.)

Finally, to the extent Edem argues that he had consensual sex with Sonora G., we have no need to cite evidence that might

---

[2] Notably, Yesica L. said that when she bit Edem, she noticed a baseball-related tattoo on his arm; he in fact has such a tattoo.

support that argument.  The jury rejected it, and the argument is an improper request to reweigh the evidence.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


LAVIN, J.


10