Filed 3/13/26  P. v. Santillan CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B341960 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA118824) |
| v. | |
| JUAN FRANCISCO SANTILLAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed with directions.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Nicholas J. Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Juan Francisco Santillan of several sex offenses against two young victims, his granddaughter and niece.  On appeal, he argues the trial court erred in admitting pursuant to Evidence Code sections 1101, subdivision (b) and 1108[1] prior uncharged sexual offenses against two other young, female family members and excluding "good" evidence from one victim's two siblings, who, defendant claims, would have rebutted the propensity evidence admitted under section 1108.  Section 1108 expressly allows the admission of prior sexual conduct as propensity evidence in a sex offense case.  Defendant has failed to show admission of this evidence was prejudicial under section 352, which is the central issue on appeal.  We conclude the trial court did not abuse its discretion in admitting evidence of the prior uncharged sexual conduct.  Assuming the trial court erred in excluding the aforementioned "good" act evidence, we also conclude that error was not prejudicial.  We thus affirm the judgment of conviction.  We, however, remand for the trial court to modify the judgment to reflect 1,021 instead of 1,016 days of presentence custody credit.

## BACKGROUND

1.  *The People charge defendant with multiple sex offenses against two young family members*

The People charged defendant with two counts of a lewd act upon a child under age 14 involving K.L. based on conduct occurring between January 1, 2016 and January 1, 2019.  The People also charged defendant with two counts of lewd act upon a

---

[1] Statutory references are to the Evidence Code unless otherwise indicated.

child under age 14 and one count of sexual penetration with a child under 10 involving A.V. based on conduct occurring between August 2014 and August 2017.  The People alleged the charges fall within the meaning of Penal Code section 667.61, subdivision (j)(2), that is, the victim was under the age of 14, and Penal Code section 667.61, subdivision (e)(4), that is, there were multiple victims.  Defendant pleaded not guilty to all counts.

2. ***Defendant opposes the People's pretrial motion to admit evidence of uncharged prior sexual offenses including against other female family members***

Prior to trial, pursuant to sections 1101 and 1108, the prosecutor moved to introduce the testimony of Y.P., G.S., A.B., Y.G., I.S., N.M., and D.P.  According to the prosecutor, defendant touched each of these victims when they collectively were ages nine through 20, and these incidents occurred between 2000 and 2018.  The conduct included touching and digital penetration of a victim's vagina.  The prosecutor argued under section 352, that the evidence was more probative than prejudicial.

Defendant opposed.  Defendant contended, among other arguments, that admitting the testimony of seven witnesses would constitute an undue consumption of time, likely confuse the jurors, and exacerbate the inherently prejudicial nature of propensity evidence.

At a hearing, the prosecutor indicated that she intended to call only two witnesses, and the trial court stated it "does believe that the burden has been met under [section] 1108.  The court does exercise its discretion under [section] 352 to allow" Y.P. and G.S. to testify.

3

## 3.    *Evidence presented at trial*

Victim K.L., defendant's niece, testified that when she was 11 years old (in approximately 2016), defendant woke her up one night when he touched and tickled her feet. K.L. felt defendant's hand move up her leg close to her vagina. On a different night, K.L. awoke when defendant touched her legs and rubbed her thigh and knee. When K.L. was 12 years old, she was asleep on a top bunk bed, and defendant tickled her feet. After K.L. told her mother about defendant's conduct, K.L.'s mother confronted defendant and defendant said that "he was sorry if he ever did those things, but he doesn't recall doing any of that." Defendant did not identify to what "that" referred.

Victim A.V., defendant's granddaughter, testified defendant touched her every other day when she was in first grade until she was in fourth grade (beginning in approximately 2014). A.V. did not remember every time it happened. She testified he touched her vagina "maybe every other day. It was pretty often."

A.V. described four incidents. Once, defendant touched her over her clothes, put her hand on his penis, and put his hand on her vagina. Defendant told A.V., "[D]on't say anything." During a second incident, when she was about six years old, she sat next to defendant under a blanket. Defendant touched A.V. under her clothing and touched outside and inside her vagina. Defendant hurt A.V. During a third incident, defendant tried to pull A.V.'s pants down, but she was able to hold them up. During a fourth incident, defendant made A.V. touch defendant's penis underneath his clothing.

J.A., defendant's son, testified A.V. told him defendant touched her in a manner she did not like.

G.S. testified that in 2003, when she was about 10 years old, defendant, her uncle, squeezed her butt and it made her uncomfortable.

Y.P. testified that in 2009, when she was about 16 years old, defendant, her uncle, touched her when she was sleeping. Defendant touched her lower buttocks, near her vagina.

A.V.'s mother recorded two calls and one voicemail from defendant. A.V.'s mother testified defendant was in Mexico at the time of the first call, and she did not know when he returned from Mexico.

The prosecutor played the recordings for the jury. In the first call, when asked "if you did something," defendant responded, "I don't remember having done anything." Defendant said, "I don't remember having done those things" but the "things" are not identified. Defendant said, "I don't remember having done anything with anybody." In the second call, A.V.'s mother told defendant she wanted him "to be honest and to tell the truth." Defendant responded he already told her he did not remember. Defendant then said, "I don't know how to say it . . . uh, in a way for you all . . . to be able to understand me . . . . that I didn't do that, sweetie." Defendant does not further identify "that." When A.V.'s mother asked what defendant meant by he did not remember, defendant said, "I mean that I didn't do that . . . ." A.V.'s mother then asked, "[S]o you, you're telling me that you never touched" A.V. and defendant responded, "Yes." Defendant also said, "[I]f she [A.V.] says that I . . . I touched her . . . I don't know why she's only telling you now." "Why didn't she, why didn't she tell you before?" Defendant later said, "I don't know what the story is that she's telling you. I also ask myself whether I touched her." Defendant said, "I feel that, I feel

5

that that didn't happen. I feel that I never did that to her." "In my mind it didn't . . . happen."

Defendant left A.V.'s mother the following voice recording: "I just want to ask your forgiveness, sweetheart. For everything that's happening. I want to ask your forgiveness, yours and [A.V.]'s. Even though . . . I already told you . . . what I told you . . . when you asked me things. But I love you very much, sweetheart. I love you. And I love your daughter too. And I love the whole family. I just ask for forgiveness. From you and her, and all of you. Especially you, and her. . . . And hopefully one day . . . you all will forgive my mistakes."

Expert witness and clinical psychologist, Jayme Jones, testified about child sexual abuse accommodation syndrome. The child sexual abuse accommodation syndrome is a group of concepts describing abused children and explaining that sexual abuse usually happens in secret, the children are typically helpless, and children typically do not fight back. Jones further testified children often learn to accommodate the abuse and delay in disclosing it. Jones reiterated, "[T]ypically when child sexual abuse occurs, there are not active witnesses."

Defendant presented no witnesses in his defense.

### 4. *Verdict and sentence*

Jury deliberations lasted less than four hours. The jury found defendant guilty of all counts and found K.L. and A.V. were under the age of 14 and there was more than one victim.

The trial court sentenced defendant to prison for 115 years to life and awarded him 1,016 days of custody credit.

# DISCUSSION

## A. Defendant Demonstrates No Error in the Admission of Y.P.'s and G.S.'s Testimony

Citing sections 1101, 1108, and 352, defendant argues the trial court erred in admitting Y.P.'s and G.S.'s testimony and also contends admission of this testimony violated his right to due process. As explained below, section 1108 is an exception to section 1101's general prohibition against admitting prior bad acts to prove propensity. Section 1108 expressly allows the admission of prior sexual offenses to prove propensity in a prosecution for a sexual offense.

The only limitation on admission of prior sexual offenses is section 352, that is, "if [the evidence's] probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

For the reasons set forth below, we conclude the trial court did not abuse its discretion in admitting Y.P.'s and G.S.'s testimony because defendant has failed to show prejudice within the meaning of section 352. Defendant's due process claim thus necessarily fails because we disagree with its premise that the prejudicial effect of this testimony outweighed its "minimal probative value." We thus do not address defendant's due process challenge further.

### 1. *Relevant legal principles*

*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790 (*Daveggio*) sets forth the legal principles applicable to a defendant's challenge to propensity evidence in a sex offense case.

7

First the evidence must be relevant: "[T]hat is, it must have some 'tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action' [citation]. A plea of 'not guilty' 'place[s] all material issues in dispute' [citation], including a defendant's intent [citation]." (*Id.* at p. 822.)

*Daveggio* explains the limitation in section 1101 on the admission of propensity evidence: "Specifically, section 1101(a) instructs that 'evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.' Subdivision (b) clarifies that subdivision (a) does not prohibit the admission of evidence relevant 'to prove some fact . . . other than [the person's] disposition to commit such an act,' such as the person's 'motive, opportunity, intent, preparation, plan, knowledge, [or] identity.' [Citations.]" (*Daveggio, supra*, 4 Cal.5th at p. 823.)

This is not true, however, for evidence of prior sexual offenses in the prosecution of a sexual offense: "[S]ection 1108 . . . carves out an exception to . . . section 1101. It provides that '[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.' (§ 1108, subd. (a); see also § 1101(a) ['Except as provided in . . . Section[ ] . . . 1108 . . . .'].) . . . . It follows that if evidence satisfies the requirements of section 1108, including that it is not inadmissible under section 352, then the admission of that

8

evidence does not violate section 1101." (*Daveggio*, *supra*, 4 Cal.5th at p. 823.)

    *Daveggio* cautions trial courts to weigh carefully evidence of prior sexual offenses against the prejudice flowing from admission of such evidence, and sets forth the relevant factors governing that weighing process:  " 'Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.  [Citations.]'  [Citation.]" (*Daveggio*, *supra*, 4 Cal.5th at pp. 823–824.)

    Significantly, *Daveggio* describes the kind of prejudice that would merit exclusion of prior sexual offenses evidence under section 1108:  " ' " ' "Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent.  The ability to do so is what makes evidence relevant.  The code speaks in terms of *undue* prejudice.  Unless the dangers of undue prejudice, confusion, or time consumption ' "substantially outweigh" ' the probative value of relevant evidence, a section 352 objection should fail.  [Citation.]  ' " The 'prejudice' referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual

9

and which has very little effect on the issues. . . .” ’ ” ’ ” ’ ‘ “ ‘ “The prejudice that section 352 ‘ “is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.” [Citations.] “Rather, the statute uses the word in its etymological sense of ‘prejudging’ a person or cause on the basis of extraneous factors.” ’ ” ’ ” ’ [Citation.]” (*Id*. at p. 824.)

Finally, we review a trial court’s rulings admitting evidence under section 1108 for abuse of discretion. (*Daveggio, supra,* 4 Cal.5th at p. 824.)

> 2.    *The trial court did not abuse its discretion in admitting Y.P.’s and G.S.’s testimony because defendant has failed to show prejudice*

Because section 1108 permits in a sexual offense prosecution, the admission of evidence of prior sexual offenses, the pivotal issue on this appeal is whether the trial court abused its discretion in finding that the probative value of Y.P.’s and G.S.’s testimony was not substantially outweighed by its prejudicial effect within the meaning of section 352. Defendant argues the prejudicial nature of Y.P.’s and G.S.’s testimony about the prior incidents exceeded their probative value because the incidents were remote in time, ranging from approximately five to 11 years prior to the charged conduct. Defendant contends admission could also cause the jury to punish defendant in this case for prior conduct that went unpunished as to the prior sexual offenses. Defendant also contends the prior uncharged misconduct “were minimally probative.”

Au contraire; Y.P.’s and G.S.’s testimony was highly probative of defendant’s disposition to commit sexual offenses against young female family members. After all, Y.P. and G.S.

10

were his nieces and the two victims in the crimes before us, K.L. and A.V, were his niece and granddaughter.  In sex offenses cases, prior uncharged conduct is admissible precisely to show propensity to commit sex offenses.  (*People v. Falsetta* (1999) 21 Cal.4th 903, 907.)  The evidence cannot be characterized as only "minimally probative."

Y.P.'s and G.S.'s testimony was not prejudicial in the sense prohibited by section 352, i.e., that it would lead to prejudging the person based on extraneous factors.  (*Daveggio*, *supra*, 4 Cal.5th at p. 824.)  Defendant identifies no extraneous factors in the testimony.  The prosecution limited the testimony to two witnesses describing only two incidents of uncharged conduct, notwithstanding the prosecution's pretrial request to admit the testimony of seven witnesses.  Y.P.'s and G.S.'s testimony did not describe acts more egregious than those described by K.L. and A.V.  The testimony did not consume substantial trial time.  In short, the trial court did not abuse its discretion in admitting the evidence under section 352 because the evidence was highly probative and the prejudice flowing from it was merely the prejudice that "naturally flows" from relevant, highly probative evidence.  (See *Daveggio*, at p. 824.)

Defendant's contrary arguments are unpersuasive. Theoretically, a defendant's uncharged acts that do not result in criminal conviction may "increase[ ] the danger that the jury" may be "inclined to punish defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses . . . ."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 (*Ewoldt*).)  Here, the jury was not told whether defendant was punished for his conduct involving Y.P. and G.S.  Defendant's premise that the propensity evidence could cause a jury to punish

11

defendant for the prior uncharged crimes in rendering its verdict in the case involving the charged crimes is thus speculative. In addition, even where a defendant is not convicted of uncharged offenses, a trial court does not abuse its discretion in admitting the uncharged offenses if other factors militate in favor of their admission. (*Ibid.* [affirming the admission of uncharged acts to show a common design or plan].) Defendant admits the "inherent admissibility of the uncharged misconduct evidence involving [Y.P.] and [G.S.] under . . . section 1101, subdivision (b)." Defendant concedes, "[T]he evidence probably met the low threshold qualifications for showing intent, which requires the least degree of similarity between the charged and uncharged misconduct."

Defendant's belief that the uncharged incidents were remote because they occurred five and 11 years prior to the charged conduct is belied by the case law. Cases have held longer periods of time between charged and uncharged conduct did not render the uncharged conduct impermissibly remote. (See *Ewoldt*, *supra*, 7 Cal.4th at p. 405 [passage of 12 years did not lessen probative value of evidence]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [passage of 20 years not remote].)

Finally, defendant's reliance on *People v. Harris* (1998) 60 Cal.App.4th 727 is misplaced. In *Harris*, a jury convicted the defendant, a mental health nurse, of several sex offenses against a current mental health patient, including licking the patient's breasts and rubbing her clitoris, and going to the house of a recently released former patient and taking off her clothes and mouthing her breast and vagina. The uncharged conduct comprised of entering the victim's apartment when he was the assistant manager of the apartment complex, beating the victim

12

unconscious, stabbing her in the chest with an ice pick, and using a sharp instrument to rip muscles in her vagina through her rectal area. (*Id*. at pp. 733–734.) The appellate court held, although evidence of an uncharged sexual offense is admissible under section 1108, the trial court should have excluded the evidence under section 352 because the uncharged conduct was "inflammatory *in the extreme*" and "described a viciously beaten and bloody victim . . . ." (*Id*. at p. 738.) In contrast, the charged crimes involved the " 'taking advantage' of two emotionally and physically vulnerable women" and were "of a significantly different nature and quality than the violent and perverse attack on a stranger that was described to the jury." (*Ibid*.)

In the case before us, the uncharged conduct was not significantly different from the charged conduct and no more inflammatory than the charged offenses themselves.

## B. Defendant Demonstrates No Prejudicial Error in the Exclusion of A.L.'s and R.L.'s Testimony

Prior to trial, defendant sought to call K.L.'s two younger siblings to testify that defendant was not inappropriate with them. Defense counsel argued the testimony would refute the section 1108 propensity evidence. The trial court found the evidence inadmissible and defendant challenges that finding on appeal.

Assuming arguendo the trial court erred in excluding the evidence, the error was not prejudicial under either the *Chapman* or *Watson* standard.[2] Contrary to defendant's contention, this was not a close case. The evidence of defendant's guilt was

---

[2] *Chapman v. California* (1967) 386 U.S. 18; *People v. Watson* (1956) 46 Cal.2d 818.

13

overwhelming. K.L.'s and A.V.'s testimony was unrebutted. Defendant offered no evidence at trial in his defense.

On appeal, defendant reasserts that K.L.'s siblings' testimony would have rebutted the propensity evidence. Even if so, K.L.'s and A.V.'s testimony concerning the charged conduct was *undisputed*. Defendant argues K.L. and A.V. lacked credibility because no one else in the house observed the abuse. This argument ignores the *undisputed* expert testimony that sexual abuse of children typically occurs when there are no witnesses. Defendant argues he never admitted the abuse in his calls with A.V.'s mother. It is debatable whether defendant's apology for his "mistakes" in his voicemail to A.V.'s mother was tantamount to an admission. Assuming arguendo it was not, the absence of an admission does not undermine the undisputed nature of the evidence against defendant. Finally, defendant argues he could have stayed in Mexico if he were guilty. There was no evidence why he went to Mexico in the first place, or why he returned. Defendant's purported inference is thus mere argument absent some evidence to create the inference defendant asks us to make. In sum, defendant fails to show prejudice even if the trial court erred in excluding the testimony of K.L.'s siblings.

C.    **The Parties Agree Defendant's Presentence Custody Credits Must Be Corrected**

Defendant argues, and respondent agrees, defendant was entitled to 1,021 days of presentence custody credits and the trial court erroneously awarded only 1,016 days. We agree as well. Penal Code section 2900.5 provides, "[A]ll days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." (Pen. Code, § 2900.5, subd. (a).) Defendant

14

was in custody for 1,021 days.  He was arrested on January 21, 2022 and sentenced on November 6, 2024.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to issue an amended abstract of judgment reflecting 1,021 days of custody credits and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.

15